UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

Michael Jones,

                Plaintiff,

-against-

The City of New York, Joseph A. Ponte,
Jessy Liburd, Carole Comas, Scott Parks,
Kernold Alves, Chika Nwogwugwu, Yves Gauvin,
Roxanne Hobbs-Green, Lynn Devivo, Frank Medard,
Rostislav Davydov, Jorge Villalobos, Iceyleen Cooper,
Olga Segal, Allareddy Reddy, Nuaemezie Umeasor,
Vanessa Jones, Andrew Riofrio, Corizon Health Inc.,
John Doe Captain #1, John Doe Captain #2,
Jane Doe Officer #1, Jane Doe Officer #2,
Jane Doe Officer #3, Jane Doe Officer #4,
John Doe Officer #1, John Doe Officer #2,
John Doe Officer #3, John Doe Officer #4,
John Doe Food Service Administrator,

                Defendants.
------------------------------------------------------------------X

**18 CV 1937**

**COMPLAINT PURSUANT TO 42 U.S.C. §1983**

**Jury Trial Demanded**

# COMPLAINT

## I   PRELIMINARY INTRODUCTION

Plaintiff in the above-caption action, allege(s) as follows:

    1)    Plaintiff, Michael Jones, bring this action seeking relief and/or damages to defendant and protect the rights guaranteed by the Constitution of the United States. This action is brought pursuant to 42 U.S.C. §1983, against Doctors, Food Service Administrators, Corizon Health Inc., Correctional Officers, Commissioner Joseph A. Ponte and The City of New York for money damages brought pursuant to 42 U.S.C. §1983, to redress the deprivation of rights secured to plaintiff by the First, Fourth, Eighth, Amendments to the United States Constitution and the aforementioned statutory provisions in their individual and official capacity.

## JURISDICTION

    2)    This court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1341 (a)(3), 1341 (a)(4), 1367 (a), and 42 U.S.C. §1983.

1

## VENUE

3) Venue is proper in this District Pursuant to 28 U.S.C. §1391.

4) It is alleged that the individual Doctors, Food Service Administrators, Corizon Health Inc., Correctional Officers, Commissioner Joseph A. Ponte, and The City of New York, failed to provide medical attention, adequate food, and committed an illegal search.

## II  PARTIES IN THIS COMPLAINT:

5) Plaintiff is and was at all times relevant herein a citizen of the United States and resides at:

A). **Plaintiff: Michael Jones #90-A-5292**
Sing Sing Corr. Fac.
354 Hunter St.
Ossining, New York 10562

B). **Defendant Number One:**
Jessy Liburd, M.D.
R.N.D.C 11-11 Hazen Street
East Elmhurst, New York 11370

**Defendant Number Two:**
Carole Comas, M.D.
R.N.D.C 11-11 Hazen Street
East Elmhurst, New York 11370

**Defendant Number Three:**
Kernold Alves, P.A..
R.N.D.C 11-11 Hazen Street
East Elmhurst, New York 11370

**Defendant Number Four:**
Chika Nwogwugwu, P.A.
R.N.D.C 11-11 Hazen Street
East Elmhurst, New York 11370

**Defendant Number Five:**
Roxanne Hobbs-Green
R.N.D.C 11-11 Hazen Street
East Elmhurst, New York 11370

**Defendant Number Six:**
Yves Gauvin, M.D.
G.M.D.C. 15-15 Hazen Street
East Elmhurst, New York 11370

**Defendant Number Seven:**
Lynn Devivo, P.A.
G.M.D.C. 15-15 Hazen Street
East Elmhurst, New York 11370

**Defendant Number Eight:**
Frank Medard, M.D.
G.M.D.C. 15-15 Hazen Street
East Elmhurst, New York 11370

**Defendant Number Nine:**
Rostislav Davydov, M.D.
G.M.D.C. 15-15 Hazen Street
East Elmhurst, New York 11370

**Defendant Number Ten:**
Jorge Villalobos, P.A.
G.M.D.C. 15-15 Hazen Street
East Elmhurst, New York 11370

**Defendant Number Eleven:**
Iceyleen Cooper, P.A.
G.M.D.C. 15-15 Hazen Street
East Elmhurst, New York 11370

**Defendant Number Twelve:**
Olga Segal, M.D.
West Facility 16-06 Hazen Street
East Elmhurst, New York 11370

**Defendant Number Thirteen:**
Allareddy Reddy, M.D.
G.M.D.C. 15-15 Hazen Street
East Elmhurst, New York 11370

**Defendant Number Fourteen:**
Nuaemezie Umeasor, M.D.
G.M.D.C. 15-15 Hazen Street
East Elmhurst, New York 11370

**Defendant Number Fifteen:**
Vanessa Jones, P.A.
G.M.D.C. 15-15 Hazen Street
East Elmhurst, New York 11370

**Defendant Number Sixteen:**
Andrew Riofrio, P.A.
G.M.D.C. 15-15 Hazen Street
East Elmhurst, New York 11370

**Defendant Number Seventeen:**
Scott Parks, P.A.
G.M.D.C. 15-15 Hazen Street
East Elmhurst, New York 11370

**Defendant Number Eighteen:**
Corizon Health Inc.
49-04 19th Ave.
Astoria, New York 11305

**Defendant Number Nineteen:**
John Doe Correction Captain #1
Transportation Division
17-17 Hazen St.
East Elmhurst, New York 11370

**Defendant Number Twenty:**
John Doe Correction Captain #2
Transportation Division
17-17 Hazen St.
East Elmhurst, New York 11370

**Defendant Number Twenty-one:**
John Doe Correction Officer #1
Transportation Division
17-17 Hazen St.
East Elmhurst, New York 11370

**Defendant Number Twenty-two:**
John Doe Correction Officer #2
Transportation Division
17-17 Hazen St.
East Elmhurst, New York 11370

**Defendant Number Twenty-three:**
John Doe Correction Officer #3
Transportation Division
17-17 Hazen St.
East Elmhurst, New York 11370

**Defendant Number Twenty-four:**
John Doe Correction Officer #4
Transportation Division
17-17 Hazen St.
East Elmhurst, New York 11370

**Defendant Number Twenty-five**
Jane Doe Correction Officer #1
Transportation Division
17-17 Hazen St.
East Elmhurst, New York 11370

**Defendant Number Twenty-six**
Jane Doe Correction Officer #2
Transportation Division
17-17 Hazen St.
East Elmhurst, New York 11370

**Defendant Number Twenty-seven**
Jane Doe Correction Officer #3
Transportation Division
17-17 Hazen St.
East Elmhurst, New York 11370

**Defendant Number Twenty-eight**
Jane Doe Correction Officer #4
Transportation Division
17-17 Hazen St.
East Elmhurst, New York 11370

**Defendant Number Twenty-nine:**
The City of New York
City Hall
New York, New York 10007

**Defendant Number Thirty:**
Joseph A. Ponte, Former Commissioner
N.Y. City Department Of Correction
75-20 Astoria Blvd.
East Elmhurst, New York 11370

**Defendant Number Thirty-one:**
John Doe Food Service Administrator
Hazen St.
East Elmhurst, New York 11370

III **EXHAUSTION OF ADMINISTRATIVE REMEDIES:**

    6-a.   There is a grievance procedure at both facilities.

    b.   Plaintiff filed grievances with both facilities.

    c.   Some grievances were denied, some was not answered.

    d.   All the grievances were appealed.

IV **PREVIOUS LAWSUITS:**

    7-a.   *Jones v. Smith, et al*, 09-CV-1058
Northern District of New York
Hon. Gary L. Sharpe
Submitted, September 2009
Trial Verdict in Plaintiff's favor/Settlement;

    b.   *Jones v. Fischer, et al*, 10-CV-1331
Northern District of New York
Hon. Gary L. Sharpe
Submitted, 2010
Dismissed;

    c.   *Jones v Breken, et al*, 02-CV-55
Western District of New York
Hon. Kenneth K. Schroeder, Jr.
Submitted, July 2002
Settled in favor of Plaintiff;

    d.   *Jones v. Artuz*, et al, 01-CV-4652
Southern District of New York
Hon. Sprizzo.
Submitted, 2001
Dismissed;

    d.   *Jones v. Coughlin*, et al, 93-CV-7341
Southern District of New York
Hon. Charles L. Briant
Submitted, 1993
Dismissed;

    e.   *Jones v. DeRose*, et al, Docket NA
Southern District of New York
Hon. Glasser
Submitted, File Date: January 1990
Settled in favor of Plaintiff.

## V     STATEMENT OF CLAIM:

8)     Plaintiff, Michael Jones, brings this action claiming that defendants violated and failed to comply with State and Federal regulations denying adequate medical treatment, inadequate meals, and illegal strip/body cavity searches in violation of his First, Forth, and Eighth, Amendments of the United States Constitution: 42 U.S.C. §1983.

9)     The institution giving rise to plaintiffs claims occurred in Robert N. Davoren Center, 11-11 Hazen St., East Elmhurst, N.Y. 11370, George Motchan Detention Center, 15-15 Hazen St., East Elmhurst, N.Y. 11370, and Transportation Division 17-17 Hazen St., East Elmhurst, N.Y. 11370.

10)     The places within the institutions where the events occurred were in the Facility Clinics, Transit Search Centers, and Facility Messhall, at Robert N. Davoren Center, 11-11 Hazen St., East Elmhurst, N.Y. 11370, George Motchan Detention Center, 15-15 Hazen St., East Elmhurst, N.Y. 11370, and Transportation Division, East Elmhurst, N.Y. 11370.

11)     The approximate time of the events concerning the defendants' were a continuing occurrence beginning on May 15, 2014, through August 2015.

12)     Defendant Joseph A. Ponte, is the former Commissioner of the New York Department of Corrections employed by the City of New York, instituted an unconstitutional Department wide policy for illegal body cavity strip-frisk-searches; entered into a contract with defendant Corizon Health Inc., that denied plaintiff adequate medical care; failed to train his Supervisors, Officers, and Staff and failed to maintain and supervise adequate food that is provided to inmates.

13)     Defendant Corizon Health Inc., entered into a contract with defendant City Of New York and New York City Department Of Corrections that granted Corizon Health Inc. the exclusive right to provide adequate medical services to inmate confined in all of New York City Correctional Facilities. Under the contract defendant, Corizon Health Inc. was allowed to make and implement illegal policies concerning the course of treatment given to inmates.

14)     Defendants, The City Of New York is a municipality in the State of New York which owns, operates, manages, directs and controls the New York City Department Of Corrections who has entered into a contract with defendant Corizon Health Inc. The New York City Department Of Corrections has granted Corizon Health Inc. the exclusive right to provide adequate medical services to inmate confined in all of New York City Correctional Facilities.

7

Under the contract defendant, Corizon Health Inc. was allowed to make and implement illegal policies concerning the course of treatments given to inmates.

## VI    FACTS:

15) By operation of State and Federal Laws, plaintiff's movement is controlled by New York State Department Of Corrections and Community Supervision. From April 18, 1990, until the present, plaintiff is an inmate in the custody of the New York State Department Of Corrections and Community Supervision. All defendants are sued in their individual and official capacity.

**FIRST CAUSE OF ACTION**
**VIOLATION OF PLAINTIFFS'**
**SERIOUS MEDICAL NEEDS;**
**CRUEL AND UNUSUAL PUNISHMENT**

16) In September of 2006, plaintiff underwent a back surgery that consisted of fusing the L4-L5, and L5-S1 Lumber Spine and Laminectomy Excision of the L4-L5, and the L5-S1 herniated disk.

17) As a result of the above surgery procedure, plaintiff is required to have a special mattress to relieve the pressure from the lumber spine area when ever he is lying or sitting in bed.

18) On May 15, 2014, plaintiff arrived at the Robert N. Davoren Center, (hereafter, R.N.D.C), intake and informed the intake examiner that he underwent a back surgery in 2006, provided them with copies of his medical records and requested to be provided with a special mattress to relieve the pressure from his lumber spine. The examiner informed plaintiff that Rikers Island and Corizon Health Inc. policy prohibits them from issuing any form of special mattress no matter what the problem.

19) Plaintiff was then housed in Mode Three Upper and was given a worn down used mattress approximately one inch in thickness with rips in it causing the insulation to come out.

20) Plaintiff began to experiences extreme lower and upper back pain, stiffness in his lower back, muscle spasms, shoulder pain, loss of sleep, numbness in his hipbones, and difficulty standing as a result of the extreme back pain.

21) On May 19, 2014, plaintiff went to see defendant Roxanne Hobbs-Green, (hereafter, Hobbs-Green), and informed her of the above medical procedure and explained the problems and pain that his mattress was causing. Defendant Hobbs-Green told plaintiff that

Rikers Island and Corizon Health Inc., policy prohibits them from issuing any form of special mattress no matter what the problem, and provided plaintiff with Ibuprofen Tablet 400mg.

22) On May 22, 2014, plaintiff went to sick-call an saw defendant Kernold Alves, (hereafter, Alves), and informed him of the above medical procedure and explained the problems and pain that his mattress was causing. Again, plaintiff was told that Rikers Island and Corizon Health Inc., policy prohibits them from issuing any form of special mattress no matter what the problem, and did not give plaintiff anything for his pain.

23) On May 29, 2914, plaintiff went to sick-call and saw defendant Carole Comas, (hereafter, Comas), and complained about extreme back, shoulder, neck pain and informed her of the above medical procedure and explained the problems and pain that his mattress was causing. Again, plaintiff was told that Rikers Island and Corizon Health Inc., policy prohibits them from issuing any form of special mattress no matter what the problem. Defendant Comas did not give plaintiff anything for his pain.

24) On June 18, 2014, July 15, 2015, and August 18, 2014, plaintiff went to sick-call and saw defendant Jessy Liburd, (hereafter, Liburd), and complained about extreme back, shoulder, neck pain and inform him of the above medical procedure and explained the problems and pain that his mattress was causing. Plaintiff explained to defendant Liburd that the worn damaged mattress was the cause of his pain and his medical condition required him to be provided with a special mattress. Plaintiff was told that Rikers Island and Corizon Health Inc. policy prohibits them from issuing any form of special mattress no matter what the problem.

25) On July 2, 2014, plaintiff was seen by defendant Chika Nwogwugwu, (hereafter, Nwogwugwu), and complained about the extreme back, shoulder, neck pain and inform him of the above medical procedure and explained the problems and pain that his mattress was causing. Defendant Nwogwugwu told that Rikers Island and Corizon Health Inc., policy prohibits them from issuing any form of special mattress no matter what the problem.

26) On August 7, 2014, was transferred to the George Motchan Detention Center, (hereafter, G.M.D.C.). Plaintiff was housed in Mode One Upper and was given a worn down used mattress approximately one inch in thickness with rips in it causing the insulation to come out.

27) On August 26, 2014, and December 8, 2014, plaintiff was seen by defendant Lynn Devivo, (hereafter, Devivo), and complained about the extreme back, shoulder, neck pain

9

and informed her of the above medical procedure and explained the problems and pain that his mattress was causing. Defendant Devivo told that Rikers Island and Corizon Health Inc., policy prohibits them from issuing any form of special mattress no matter what the problem.

28) On September 3, 2014, November 25, 2014, and October 15, 2015, plaintiff was seen by defendant Yves Gauvin, (hereafter, Gauvin), and complained about the extreme back, shoulder, neck pain and informed him of the above medical procedure and explained the problems and pain that his mattress was causing. Plaintiff was then told that Rikers Island and Corizon Health Inc., policy prohibits them from issuing any form of special mattress no matter what the problem.

29) On November 18, 2014, January 5, 2015, and March 23, 2015, plaintiff was seen by Jorge Villalobos, (hereafter, Villalobos), and complained about the extreme back, shoulder, neck pain and informed him of the above medical procedure and explained the problems and pain that his mattress was causing. Plaintiff was then told that Rikers Island and Corizon Health Inc., policy prohibits them from issuing any form of special mattress no matter what the problem.

30) On December 20, 2014, plaintiff was seen by defendant Nuaemezie Umeasor, (hereafter, Umeasor), and complained about the extreme back, shoulder, neck pain and informed him of the above medical procedure and explained the problems and pain that his mattress was causing. Plaintiff was then told that Rikers Island and Corizon Health Inc., policy prohibits them from issuing any form of special mattress no matter what the problem, but provided plaintiff with Tylenol #3.

31) On December 26, 2014, plaintiff was seen by defendant Allareddy Reddy, (hereafter, Reddy), and complained about the extreme back, shoulder, neck pain and informed him of the above medical procedure and explained the problems and pain that his mattress was causing. Plaintiff was then told that Rikers Island and Corizon Health Inc., policy prohibits them from issuing any form of special mattress no matter what the problem.

32) On November 5, 2014, plaintiff was seen by defendant Kernold Alves, (hereafter, Alves), and complained about the extreme back, shoulder, neck pain and inform him of the above medical procedure and explain the problems and pain that his mattress was causing. Plaintiff was then told that Rikers Island and Corizon Health Inc., policy prohibits them from issuing any form of special mattress no matter what the problem.

33) On September 29, 2014, plaintiff was seen by defendant Vanessa Jones, (hereafter, Jones), and complained about the extreme back, shoulder, neck pain and informed her of the above medical procedure and explained the problems and pain that his mattress was causing. Plaintiff was then told that Rikers Island and Corizon Health Inc., policy prohibits them from issuing any form of special mattress no matter what the problem, but advised plaintiff to take another mattress when somebody leaves and place it on top of his worn mattress.

34) On September 17, 2014, plaintiff was seen by defendant Andrew Riofrio, (hereafter, Riofrio), and complained about the extreme back, shoulder, neck pain and informed him of the above medical procedure and explained the problems and pain that his mattress was causing. Plaintiff was then told that Rikers Island and Corizon Health Inc., policy prohibits them from issuing any form of special mattress no matter what the problem.

35) On September 11, 2014, and October 9, 2014, plaintiff was seen by defendant Scott Parks, (hereafter, Parks), and complained about the extreme back, shoulder, neck pain and informed him of the above medical procedure and explained the problems and pain that his mattress was causing. Plaintiff was then told that Rikers Island and Corizon Health Inc., policy prohibits them from issuing any form of special mattress no matter what the problem.

36) On January 16, 2015, and January 26, 2015, plaintiff was seen by defendant Frank Medard, (hereafter, Medard), and complained about the extreme back, shoulder, neck pain and informed him of the above medical procedure and explained the problems and pain that his mattress was causing. Plaintiff was then told that Rikers Island and Corizon Health Inc., policy prohibits them from issuing any form of special mattress no matter what the problem.

37) On February 18, 2015, plaintiff was seen by defendant Iceyleen Cooper, (hereafter, Cooper), and complained about the extreme back, shoulder, neck pain and informed him of the above medical procedure and explained the problems and pain that his mattress was causing. Plaintiff was then told that Rikers Island and Corizon Health Inc., policy prohibits them from issuing any form of special mattress no matter what the problem.

38) On April 5, 2015, plaintiff was seen by defendant Rostislav Davydov, (hereafter, Davydov), and complained about the extreme back, shoulder, neck pain and informed him of the above medical procedure and explained the problems and pain that his mattress was causing. Plaintiff was then told that Rikers Island and Corizon Health Inc., policy prohibits them from issuing any form of special mattress no matter what the problem.

39) On April 16, 2015, March 23, 2015, and December 30, 2015, plaintiff was seen by defendant Olga Segal, (hereafter, Segal), at the West Facility and complained about the extreme back, shoulder, neck pain and informed her of the above medical procedure and explained the problems and pain that his mattress was causing. Plaintiff was then told that Rikers Island and Corizon Health Inc., policy prohibits them from issuing any form of special mattress no matter what the problem.

## SECOND CAUSE OF ACTION
## FAILURE TO PROVIDE
## ADEQUATE AND WHOLESOME FOOD;
## CRUEL AND UNUSUAL PUNISHMENT

40) On February 25, 2015, plaintiff went to the facility Messhall at G.M.D.C., and received his meal that consisted of Franks. After plaintiff consumed some of the Franks, he noticed that they were discolored. Plaintiff went to the Messhall Captain and complained that the Franks were discolored. The Messhall Captain informed plaintiff that there is nothing that could done because the franks were not prepared at the G.M.D.C., but were prepared by the Food Service Administrator in a food-processing center on another part of Rikers Island.

41). Later that evening, plaintiffs' stomach began to ache badly, and he developed a high fever. Plaintiff developed a bad case of diarrhea and began to vomit. The symptoms became worst and continued throughout the day. Plaintiff went to the Dorm Unit Officer, explained his condition, and requested that he be allowed to go the emergency sick call.

42) Plaintiff symptoms became worst throughout the day until he began to vomit blood, became weak and feverish. Plaintiff was finally given access to the clinic and the doctor informed plaintiff that he had a case of food poisoning. Plaintiff was given medication and returned to his Dorm with instructions not to eat until the poison runs its course.

## THIRD CAUSE OF ACTION
## ILLEGAL STRIP/CAVITY SEARCH/
## RELIGIOUS VIOLATION

43) On the morning of April 14, 2015, plaintiff went through the normal body cavity strip-search procedure in G.M.D.C., strip area to go to court of that day.

44) After the completion of the search, plaintiff was placed in a Holding Pen to wait for the bus. Plaintiff was called out of the Holding Pen to board the bus to go to court. After plaintiff boarded the bus, the entire bus was taken to a search Facility. At that time, a John Doe

Captain #1, and Three John Doe Officers boarded the bus wearing Gas Masks, armed with canisters of a chemical agent known as MK9.

45) The John Doe Captain #1 and the three John Doe Correctional Officers wore all black uniforms with no identification tags. The John Doe Captain #1 began to yell in a threatening manner stating, "listen up, I want all you mother fuckers off the bus now. If you give my officers or me any shit, we will spray your ass until you fall out. Stand up walk straight off the bus and do not look back or say a word. This is the new policy handed down from the Commissioner."

46) Upon exiting the bus, there were a number of male John Doe Officers wearing all black uniforms with no identification tags armed with canisters of a chemical agent known as MK9, directing plaintiff and the entire occupants of the bus to enter the search Facility building in a straight line.

47) Plaintiff was made to stand side by side shackled to another inmate while a female Jane Doe Officer #1 lead a Drug Sniffing-Dog up and down the line on inmates in the front and back of plaintiff. The drug sniffing-dog did not pick up anything during the procedure. A female Jane Doe #2 Officer was filming the entire incident.

48) Thereafter, the John Doe Officer #1 ordered plaintiff to go into a large open cage while still shackled to another inmate. Plaintiff was then unshackled, stood next to other inmates, and ordered to strip naked while standing on the cold floor with no form of floor mat. Plaintiff explained to the John Doe Officer #1 that he was registered under the Jewish faith and was not supposed to disrobe in the presence of other inmates.

49) The John Doe Officer #1 stated that this was the new policy, and didn't want to hear what plaintiff had to say and ordered plaintiff to place his hands on top of his head, spread his legs and bend over and cough five times, open his mouth, and run his hand between his lips, turn around place his hand against the gate, lift up his left and right foot in the presence of female officers and other inmates.

50) Plaintiff's cloths were thrown on the dirty floor while a second John Doe Officer #2 wearing a gasmask armed with a canister of a chemical agent known as MK9, threatening plaintiff stating, "if you fail to comply or say anything, I will spray you in your face."

51) On the afternoon of April 22, 2015, while returning from court, the entire bus was taken to a search Facility, where a John Doe Captain #2 and a number of John Doe Officers

wearing all black uniforms with no identification tags armed with canisters of a chemical agent known as MK9 boarded to bus. The John Doe Captain #2 began to yell in a threatening manner stating, "you guys know the drill, stand up and don't say a word. Get the fuck off the bus in a straight line. This is the new policy, if there is any shit, you will be sprayed."

52) Plaintiff and the entire occupants of the bus was ordered to enter the search Facility building in a straight line. Plaintiff was made to stand side by side shackled to another inmate while a female Jane Doe Officer #3 lead a Drug Sniffing-Dog up and down the line on inmates in the front and back of plaintiff. The drug sniffing-dog did not pick up anything during the procedure. A female Jane Doe Officer #4 was filming the entire incident.

53) Thereafter, the John Doe Officer #3 ordered plaintiff to go into a large open cage while still shackled to another inmate. Plaintiff was then unshackled, stood next to other inmates, and order to strip naked while standing on the cold floor with no form of floor mat. Plaintiff explained to the John Doe Officer #3 that he was registered under the Jewish faith and was not supposed to disrobe in the presence of other inmate.

54) Again John Doe Officer #3 stated that this was the new policy, and didn't want to hear what plaintiff had to say and ordered plaintiff to place his hands on top of his head, spread his legs and bend over and cough five times, open his mouth, and run his hand between his lips, turn around place his hand against the gate, lift up his left and right foot in the presence of female officers and other inmates.

55) Plaintiff's cloths were thrown on the dirty floor while a second John Doe Officer #4 wearing a gasmask armed with a canister of a chemical agent known as MK9, threatening plaintiff stating, "if you fail to comply or say anything, I will spray you in your face."

56) Plaintiff was placed back on the bus, taken to G.M.D.C.; there he was subjected to another full body cavity strip-frisk-search upon entering the facility.

### FORTH CAUSE OF ACTION

57-a) Paragraphs 1 through 53 is incorporated herein by reference as though fully set forth.

    b. All the above defendant's are sued in their individual and official capacity.

    c. Plaintiff demand(s) a trial by **JURY**.

58) **WHEREFORE**, plaintiff prays that this Court grant the following relief: **1.** One Million (1,000,000.00) Compensatory Damages; and **2**. One Million (1,000,000.00); Punitive Damages.

I, Michael Jones, declare under penalty of perjury that the forgoing is true and correct.

**DATE:** February 24, 2018

Respectfully submitted

_____
Michael Jones #90-A-5292
Plaintiff, Pro se

# CERTIFICATE OF SERVICE

I, Michael Jones #90-A-5292, certify that a true and correct copy of the foregoing 42 U.S.C, §1983 was served upon the Pro se Clerks Office at the United States District Court-Southern District of New York, Daniel Patrick Moynihan United States Courthouse. 500 Pearl St., Room 230, New York, New York 10007 on February 24, 2018.

Respectfully submitted,

*Michael Jo[signature]*

Michael Jones, Pro se
354 Hunter St.
Ossining, N.Y. 10562

SWORN TO BEFORE ME THIS

24th DAY OF FEBRUARY 2018

_____
NOTARY PUBLIC

Jones 90A5292
unter St.
ng. N.Y. 10562




USM P3
SDNY

Pro Se Clerks Office
United States District Court
Southern Distict of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 230
New York, New York   10007

2018 MAR -2  PM 3: 21

LEGAL MAIL