18 CV 1937 (VSB)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL JONES,

Plaintiff,

-against-

THE CITY OF NEW YORK, JOSEPH A. PONTE,
ROSTISLAV DAVYDOV, OLGA SEGAL, CORIZON
HEALTH INC, CAPTAIN JOHN DOE #1; CAPTAIN
JOHN DOE #2; OFFICER JANE DOE #1; OFFICER
JANE DOE #2; OFFICER JANE DOE #3; OFFICER
JANE DOE #4; OFFICER JOHN DOE #1; OFFICER
JOHN DOE #2; OFFICER JOHN DOE #3; OFFICER
JOHN DOE#4

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF CITY
DEFENDANTS' MOTION FOR JUDGMENT ON
THE PLEADINGS**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for City Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Sharon Sprayregen*
*Tel: (212) 356-0873*
*Matter No. 2018-035055*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 2

ARGUMENT ....................................................................................................................... 3

LEGAL STANDARD .......................................................................................................... 3

POINT I - PLAINTIFF FAILS TO STATE A CLAIM FOR INADEQUATE BEDDING ................................................................... 4

    (a) Objective Prong ................................................................. 5

    (b) Subjective Prong ................................................................ 7

POINT II - PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF HIS CONSTITUTIONAL RIGHTS RESULTING FROM THE ALLEGED STRIP SEARCHES ............................................................. 8

    A. Plaintiff Fails to State a Claim for Violation of his Fourth Amendment Rights ..................................... 8

    B. Plaintiff Fails to State a Claim for Violation of his First Amendment Rights .................................... 11

    C. The John and Jane Doe Correction Officers are Entitled to Qualified Immunity ......................... 13

POINT III - THE COMPLAINT FAILS TO SUFFICIENTLY ALLEGE THE PERSONAL INVOLVEMENT OF DEFENDANT PONTE ................................................... 15

POINT IV - PLAINTIFF FAILS TO STATE A CLAIM FOR MUNICIPAL LIABILITY ............................................... 16

POINT V - PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES ........................................................... 19

CONCLUSION .................................................................................................................... 20

## **TABLE OF AUTHORITIES**

<u>**Cases**</u>                                                                                                    <u>**Pages**</u>

*Abbas v. Dixon*,
   480 F.3d 636 (2d Cir. 2007).......................................................................................4

*Amnesty Am. v. Town of West Hartford*,
   361 F.3d 113 (2d Cir. 2004).....................................................................................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................3

*Back v. Hastings on Hudson Union Free Sch. Dist.*,
   365 F.3d 107 (2d Cir. 2004).....................................................................................16

*Bd. of the Cnty. Comm'rs v. Brown*,
   520 U.S. 397 (1997)...............................................................................................17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................3, 4

*Calicchio v. Sachem Cent. Sch. Dist.*,
   185 F. Supp. 3d 303 (E.D.N.Y. 2016) ...................................................................18

*Canedy v. Boardman*,
   91 F.3d 30 (7th Cir. 1996) ......................................................................................15

*Colon v. Coughlin*,
   58 F.3d 865 (2d Cir. 1995)......................................................................................16

*Daly v. New York City*,
   2017 U.S. Dist. LEXIS 82209, 2017 WL 2364360 (S.D.N.Y. May 30, 2017),
   *report and recommendation adopted,* 2017 WL 2963502
   (S.D.N.Y. July 11, 2017) ..........................................................................................6

*Darnell v. Pineiro*,
   849 F.3d 17 (2d Cir. 2017)........................................................................................4

*District of Columbia v. Wesby*,
   138 S. Ct. 577 (2018)..............................................................................................13

*Dove v. Fordham Univ.*,
   56 F. Supp. 2d 330 (S.D.N.Y. 1999).......................................................................16

**Cases**                                                                **Pages**

*Dye v. City of New York*,
  09 Civ. 2460 (RJS) (RLE), 2011 U.S. Dist. LEXIS 76689
  (S.D.N.Y. Mar. 29, 2011),
  *recommendation adopted*, 2011 U.S. Dist. LEXIS 76914 (July 15, 2011) .........................9, 10

*Estelle v. Gamble*,
  429 U.S. 97 (1976).................................................................................................................4

*Farid v. Ellen*,
  593 F.3d 233 (2d Cir. 2010)...................................................................................................16

*Farmer v. Brennan*,
  511 U .S. 825, 834, (1994)......................................................................................................7

*Florence v. Bd. of Chosen Freeholders*,
  132 S. Ct. 1510 (2012).............................................................................................................8

*Gaines v. City of N.Y.*,
  No. 15-CV-2630 (RRM) (RER), 2016 U.S. Dist. LEXIS 136951,
  (E.D.N.Y. Sep. 28, 2016)........................................................................................................8

*Giaccio v. City of N.Y.*,
  308 F. App'x 470 (2d Cir. 2009) .........................................................................................18

*Graziano v. Pataki*,
  689 F.3d 110, 114 (2d Cir. 2012)..........................................................................................3

*Grimmett v. Corizon Med. Assocs. of N.Y.*,
  No. 15-CV-7351 (JPO) (SN), 2017 U.S. Dist. LEXIS 79794
  (S.D.N.Y. May 24, 2017)........................................................................................................17

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982)................................................................................................................13

*Harris v. Mills*,
  572 F.3d 66 (2d Cir. 2009).....................................................................................................4

*Hathaway v. Coughlin*,
  99 F.3d 550 (2d Cir. 1996).....................................................................................................4

*Hernandez v. Coughlin*,
  18 F.3d 133 (2d Cir. 1994)......................................................................................................3

*Hodge v. Sidorowicz*,
  10 Civ. 428 (PAC) (MHD), 2010 US Dist LEXIS 142308
  (S.D.N.Y. Nov. 2, 2010) .......................................................................................................10

**Cases**                                                                   **Pages**

*Hodges v. Stanley*,
    712 F.2d 34 (2d Cir. 1983)...................................................................................11

*Holland v. City of New York*,
    197 F. Supp. 3d 529, 546 (S.D.N.Y. 2016)..................................................10, 15

*Howard v. City of New York*,
    No. 12-CV-4069 (PAE) (JCF)
    *et al*., 2012 U.S. Dist. LEXIS 186204, 2012 WL 7050623
    (S.D.N.Y. Dec. 20, 2012),
    *report and recommendation adopted,* 2013 U.S. Dist. LEXIS 21509, 2013
    WL 504164 (S.D.N.Y. Feb. 11, 2013).........................................................................6

*Hughes v. U.S. Postal Service*,
    700 F. Supp. 779 (S.D.N.Y. 1988) ..........................................................................10

*Hurley v. Ward*,
    549 F. Supp. 174 186 (S.D.N.Y. 1982).....................................................................12

*Israel v. City of N.Y.*,
    2012 U.S. Dist. LEXIS 144712, 2012 WL 4762082 (S.D.N.Y. Oct. 5, 2012)........9

*Ivani Contr. Corp. v. City of New York*,
    103 F.3d 257 (2d Cir. 1997)......................................................................................19

*Jean-Laurent v. Lawrence*,
    2013 U.S. Dist. LEXIS 38004, 2013 WL 1129813 (S.D.N.Y. Mar. 19, 2013)..........12, 14, 15

*Locicero v. O'Connell*,
    419 F. Supp. 2d 521 (S.D.N.Y. 2006).........................................................................4

*Lore v. City of Syracuse*,
    670 F.3d 127 (2d Cir. 2012).......................................................................................19

*McLaurin v. New Rochelle Police Officers*,
    373 F. Supp. 2d 385 (S.D.N.Y. 2005),
    *aff'd in part, vacated on other grounds*, 2007 U.S. App. LEXIS 1839, 2007
    WL 247728 (2d Cir. Jan. 25, 2007) ..........................................................................18

*Miller v. Bailey*,
    2008 U.S. Dist. LEXIS 31863, 2008 WL 1787692 (E.D.N.Y. Apr. 17, 2008) .........9

*Missel v. County of Monroe*,
    351 F. App'x 543 (2d Cir. 2009) ...............................................................................17

**Cases**                                                                                                    **Pages**

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978) ................................................................................................17, 18, 19

*Montgomery v. Hall*,
    No. 11-CV-4645 (PAC) (GWG), 2013 U.S. Dist. LEXIS 103129
    (S.D.N.Y. May 14, 2013),
    *report and recommendation adopted*, 2013 U.S. Dist. LEXIS 102213, 2013
    WL 3816706 (July 22, 2013) .....................................................................................9

*Nelson v. New York City N.Y.*,
    No. 16. Civ. 6354, 2017 U.S. Dist. LEXIS 107946, 2017 WL 2983885,
    (S.D.N.Y. July 12, 2017)
    *report and recommendation adopted,* 2017 U.S. Dist. LEXIS 118082, 2017
    WL 3207789 (S.D.N.Y. July 27, 2017) ......................................................................6

*Newport v. Fact Concerts*,
    453 U.S. 247 (1981) .................................................................................................19

*Okin v. Vill. of Cornwall-On-Hudson Police Dep't*,
    577 F.3d 415 (2d Cir. 2009) ...................................................................................13

*Pabon v. Wright*,
    99-CV-2196, 2004 U.S. Dist. LEXIS 5565, 2004 WL 628784
    (S.D.N.Y. Mar. 29, 2004) ..........................................................................................7

*Patterson v. Cnty. of Oneida*,
    375 F.3d 206 .........................................................................................................18

*Pearson v. Callahan*,
    555 U.S. 223 (2009) ...............................................................................................13

*Phelps v. Kapnolas*,
    308 F.3d 180 (2d Cir. 2002) .....................................................................................3

*Pizarro v. Bd. of Corr.*,
    No. 16-cv-2418 (RJS), 2018 U.S. Dist. LEXIS 120026, 2018 WL 3462512
    (S.D.N.Y. July 17, 2018) .........................................................................................12

*Prince v. County of Nassau*,
    837 F. Supp. 2d 71 (E.D.N.Y. 2011),
    *aff'd*, 563 Fed. App'x 13 (2d Cir. 2014) ..................................................................18

*Purcell v. Coughlin*,
    790 F.2d 263 (2d Cir. 1986) ...................................................................................10

**Cases**                                                                                        **Pages**

*Rainey v. Ponte*,
   2017 U.S. Dist. LEXIS 119804, 2017 WL 3267746 (S.D.N.Y. July 28, 2017) ....................12

*Ricciuti v. N.Y.C. Transit Authority*,
   941 F.2d 119 (2d Cir. 1991)................................................................................17

*Rodriguez v. Fergunsen*,
   No. 18-CV-5826 (CM), 2019 U.S. Dist. LEXIS 21028
   (S.D.N.Y. Feb. 1, 2019) ....................................................................................10

*Roundtree v. City of N.Y.,*
   No. 15cv8198, 2018 U.S. Dist. LEXIS 51919....................................................10

*Rubio v. Cty. of Suffolk*,
   328 F. App'x 36 (2d Cir. 2009) ........................................................................18

*Saidin v. N.Y.C. Dep't of Educ.*,
   498 F. Supp. 2d 683 (S.D.N.Y. 2007)................................................................4

*Santiago v. Ponte*,
   No. 14-CV-6473, 2016 U.S. Dist. LEXIS 20016, (S.D.N.Y. Feb. 18, 2016),
   *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 98174
   (S.D.N.Y. Jul 26, 2016) ................................................................................5, 8

*Segal v. City of New York*,
   459 F.3d 207 (2d Cir. 2006)..............................................................................17

*Seymore v. Dep't of Corr. Servs.*,
   No. 11 Civ. 2254, 2014 U.S. Dist. LEXIS 21404 (S.D.N.Y. Feb. 18, 2014) ...........7

*Smith v. City of New York*,
   No. 14-CV-5934 (JCF), 2015 U.S. Dist. LEXIS 81337, 2015 WL 3929621
   (S.D.N.Y. June 17, 2015)................................................................................8, 9

*Thompson v. City of N.Y.*,
   16 Civ. 824 (PKC), 2017 U.S. Dist. LEXIS 70423, 2017 WL 1929552
   (S.D.N.Y. May 9, 2017)....................................................................................8

*Triano v. Town of Harrison*,
   895 F. Supp. 2d 526 (S.D.N.Y. 2012)..............................................................19

*Turner v. The City*,
   2017 U.S. Dist. LEXIS 205235, (S.D.N.Y. Dec. 12, 2017),
   *report and recommendation adopted,* 2018 U.S. Dist. LEXIS 6034, 2018 WL
   401513 (S.D.N.Y January 12, 2018)....................................................................6

**Cases**                                                                                      **Pages**

*Walker v. Ponte*,
  No. 14 Civ. 8507 (ER), 2016 U.S. Dist. LEXIS 110062, 2016 WL 4411415
  (S.D.N.Y. Aug. 18, 2016) ....................................................................................................9

*Woodward v. Perez*,
  2014 U.S. Dist. LEXIS 121329, 2014 WL 4276416 (S.D.N.Y. Aug. 29, 2014)...............14, 15

*Youmans v. Schriro*,
  No. 12-CV-3690, 2013 U.S. Dist. LEXIS 171011, 2013 WL 6284422
  (S.D.N.Y. Dec. 3, 2013)......................................................................................................5

**Statutes**

42 U.S.C. § 1983 ..........................................................................................1, 10, 16, 17

Fed. R. Civ. Proc. 12(b)(6) ...............................................................................................3

Fed. R. Civ. Proc. 12(c) ................................................................................................1, 3

## PRELIMINARY STATEMENT

Plaintiff *pro se* Michael Jones, a sentenced prisoner in the custody of the New York City Department of Correction at the relevant times, commenced this action pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights were violated while at the George Motchan Detention Center (GMDC).  Plaintiff alleges Dr. Rostislav Davydov and Dr. Olga Segal violated his constitutional rights by denying him a "special mattress," and that he was subjected to unconstitutional strip searches by several John and Jane Doe correction officers when he was taken to and from court.[1]

Defendants the City of New York ("City"), Corizon Health, Inc. ("Corizon"), Commissioner Joseph Ponte, and Dr. Rostislav Davydov (together, "City Defendants") move for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure on the grounds that Plaintiff 1) fails to state an Eighth Amendment claim regarding his allegedly inadequate bedding; 2) fails to state a Fourth and First Amendment claim regarding the alleged strip searches; 3) fails to overcome the qualified immunity defense of the John and Jane Doe correction officers who allegedly conducted the strip searches; 4) fails to allege that Commissioner Ponte was personally involved in the purported violation of his constitutional rights; and 5) fails to state a claim for municipal liability against the City and Corizon. Accordingly, the Complaint should be dismissed in its entirety.

---

[1] The Court *sua sponte* dismissed Plaintiff's § 1983 claims against Defendants Hobbs-Green, Kernold Alves, Carole Comas, Jessy Liburd, Chika Nwogwugwu, Lynn Devivo, Yves Gauvin, Jorge Villalobos, Nuaemezie Umeasor, Allareddy Reddy, Vanessa Jones, Andrew Riofrio, Scott Parks, Frank Medard, and Iceyleen Cooper as time-barred.  *See* dkt. no 7 at *4.  The Court also *sua sponte* dismissed all claims related to Plaintiff's allegation that he suffered a single incident of food poisoning because such an allegation "does not rise to the level of a constitutional violation."  *See* dkt. no. 7 at *4-5.

### STATEMENT OF FACTS

Plaintiff alleges that in September 2006 he underwent back surgery consisting of a fusion of the L4-L5 and L5-S1 vertebrae and a laminectomy excision of herniated disks at L4-L5 and L5-S1. (Compl. ¶ 16).  He further alleges that "as a result of this procedure plaintiff is required to have a special mattress to relieve the pressure from the lumbar spine area when ever [sic] he is lying or sitting in bed."  (*Id.* ¶ 17).

Plaintiff claims that on April 5, 2015 he was seen by defendant Dr. Rostislav Davydov, and on April 16, 2015 he was seen by defendant Dr. Olga Segal.  (*Id*. ¶¶ 38, 39).  He claims that, when he was seen by each doctors, he "complained about the extreme back, shoulder, neck pain and informed [each doctor] of the above medical procedure and  explained the problems  and  pain that his mattress  was causing."  (*Id*. ¶¶ 38, 39).  Plaintiff alleges that he was told by each doctor "that Rikers Island and Corizon Health Inc., policy prohibits them from issuing any form of special mattress no matter what the problem."  (*Id*. ¶¶ 38, 39).

Plaintiff also alleges he was subjected to unconstitutional strip searches by several John and Jane Doe correction officers when he was taken to court from GMDC, and from court to GMDC.  Plaintiff alleges that on April 14, 2015, prior to leaving for court, he "went through the normal body cavity strip-search procedure in G.M.D.C., strip area" (*id.* ¶ 43), and on April 22, 2015, after returning from court, at GMDC he was subjected to  a "full body cavity strip-frisk-search."  (*Id.* ¶ 56).  Plaintiff further alleges that, after the strip search on April 14, 2015, and before the strip search on April 22, 2015 he was strip searched in an allegedly unconstitutional manner at a separate "search Facility."  (*Id*. ¶¶ 44, 51).  The searches that allegedly took place at the "search Facility" are described similarly.  Plaintiff alleges that, prior to each search, several correction officers in gas masks carrying canisters of MK9 yelled at him and other inmates to get off the bus they were on.  (*Id*. ¶¶ 45, 46, 50, 51).  Once off the bus, on each occasion, he "stood

next to other inmates, and [was] ordered to strip naked." (*Id.* ¶¶ 48, 53). Plaintiff alleges that, on each occasion, he explained to a correction officer that "he was registered under the Jewish faith and not supposed to disrobe in the presence of other inmates." (*Id.* ¶¶ 48, 53). Plaintiff claims that, on each occasion, an unidentified correction officer responded that "this was a new policy, and [he] didn't want to hear what plaintiff had to say." (*Id.* ¶¶ 49, 54). Plaintiff alleges that, on each occasion, a correction officer threatened to spray him with MK9 in the face if he failed to comply with the strip search *(id.* ¶¶ 50, 55), and that a female correction officer was filming each incident *(id.* ¶¶ 47, 52).

Plaintiff is requesting one million in compensatory damages, and an additional one million in punitive damages. (*Id.* ¶ 58).

## ARGUMENT

## LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." A motion made under Rule 12(c) for judgment on the pleadings is governed by the same standard as a motion to dismiss pursuant to Rule 12(b)(6). *See* Graziano v. Pataki, 689 F.3d 110, 114 (2d Cir. 2012).

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (citing *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994)). However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

3

Further, while pro se pleadings are to be construed liberally and read to raise the strongest arguments that they suggest, *see, e.g., Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007), this does not relieve pro se plaintiffs of the requirement to plead enough facts to "nudg[e] their claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, or to otherwise comply with the pleading standards prescribed by the Federal Rules of Civil Procedure. *Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007); *see also Locicero v. O'Connell*, 419 F. Supp. 2d 521, 525 (S.D.N.Y. 2006) (pro se litigants must allege facts sufficient to indicate that they were deprived of a constitutional right). Thus, dismissal of a pro se complaint is appropriate where the plaintiff fails to allege facts supporting his claim to relief. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

**POINT I - PLAINTIFF FAILS TO STATE A CLAIM FOR INADEQUATE BEDDING**

Plaintiff fails to state a constitutional claim regarding his allegedly inadequate bedding. As a convicted prisoner (Compl. ¶ 15), Plaintiff's claims are government by the Cruel and Unusual Punishments Clause of the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017).

The Eighth Amendment is violated by a prison official's failure to ensure a prisoner's health and safety only when the official acts with "deliberate indifference to [the prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To state a claim, a prisoner must satisfy both the objective and subjective prongs of this standard, alleging that: 1) "[o]bjectively, the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists;" and 2) subjectively, the defendant "must act with a sufficiently culpable state of mind." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotations omitted).

4

To adequately plead the objective and subjective prongs of an Eighth Amendment claim asserting an inadequate mattress, "a plaintiff must plead: (1) he had a medical condition requiring a non-standard bed to protect against serious damage to his future health; (2) he made his condition known to the prison officials; (3) he requested a non-standard bed to accommodate the condition; and (4) his request was denied by an official who knew of and disregarded an excessive risk to the plaintiff's health or safety." *Santiago v. Ponte*, No. 14-CV-6473, 2016 U.S. Dist. LEXIS 20016, at *5-6 (S.D.N.Y. Feb. 18, 2016), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 98174 (S.D.N.Y. Jul 26, 2016); *see also Youmans v. Schriro*, No. 12-CV-3690, 2013 U.S. Dist. LEXIS 171011, at *4-5, 2013 WL 6284422 (S.D.N.Y. Dec. 3, 2013) (same). Here, Plaintiff fails to satisfy either the objective or the subjective prong with regard to his claims, and his Complaint should accordingly be dismissed.

### (a)    Objective Prong

The Complaint fails to satisfy the objective prong of the Eighth Amendment analysis because it does not allege that Plaintiff had a medical condition requiring a special bed "to protect against serious damage to his future health." *Santiago*, 2016 U.S. Dist. LEXIS 20016, at *5-6. Instead, Plaintiff alleges that he complained about "the extreme back, should, [and] neck pain," informed the medical providers of "the above medical procedure and explained the problems and pain that his mattress was causing." (Compl. ¶¶ 38, 39). Crucially, the Complaint does not assert that Plaintiff's back illness poses a "serious threat to his future health," or that that his condition requires a special mattress to "protect his future health." In the absence of any such allegations, the Complaint fails to meet the objective prong of the Eighth Amendment analysis.

Moreover, and significantly, Plaintiff fails to plead facts sufficiently demonstrating that his pain was caused by his mattress at GMDC, an omission which is also fatal

to his claim.   Specifically, though Plaintiff states that he had prior back surgery, that he is "required to have a special mattress" (Compl. ¶ 17), and that he was in pain (*id.* ¶¶ 38, 39), his allegations are conclusory and he does not plead facts that "plausibly link" his pain to the allegedly inadequate mattress, as he is required to plead.   Numerous decisions in the Southern District have dismissed similar claims because they fail to plausibly allege this crucial link between the allegedly inadequate mattress and plaintiffs' pain.   *See, e.g., Daly v. New York City*, 2017 U.S. Dist. LEXIS 82209 at *8, 2017 WL 2364360 (S.D.N.Y. May 30, 2017), *report and recommendation adopted,* 2017 U.S. Dist. LEXIS 106963, 2017 WL 2963502 (S.D.N.Y. July 11, 2017) (dismissing claim where plaintiff suffered from "spinal stenosis as well as 2 crushed vertebrae" and alleged that his mattress "causes medical issues and induces severe pain" for failure to link plaintiff's pain to the inadequate mattress); *Nelson v. New York City N.Y.*, No. 16. Civ. 6354, 2017 U.S. Dist. LEXIS 107946, 2017 WL 2983885, at *3 (S.D.N.Y. July 12, 2017) *report and recommendation adopted,* 2017 U.S. Dist. LEXIS 118082, 2017 WL 3207789 (S.D.N.Y. July 27, 2017) (pleading requirements not satisfied where plaintiff failed to offer "any plausible link" between the alleged misuse of the mattress and his back pain and the exacerbation of his preexisting back and other pain); *Howard v. City of New York*, No. 12-CV-4069 (PAE) (JCF) *et al.*, 2012 U.S. Dist. LEXIS 186204, at *26, 2012 WL 7050623 (S.D.N.Y. Dec. 20, 2012), *report and recommendation adopted,* 2013 U.S. Dist. LEXIS 21509, 2013 WL 504164 (S.D.N.Y. Feb. 11, 2013) (dismissing claims based on allegations that plaintiffs suffered lower back pain and the exacerbation of prior injuries because plaintiffs "fail[ed] to provide the factual detail necessary to allege plausibly that they suffered the injuries as a result of the beds" and ruling as insufficient the plaintiffs' "'naked assertions' that they suffered 'extreme pain' as a result of inadequate beds"); *Turner v. The City*, 2017 U.S. Dist. LEXIS 205235, at *6 (S.D.N.Y. Dec. 12,

6

2017), *report and recommendation adopted,* 2018 U.S. Dist. LEXIS 6034, 2018 WL 401513 (S.D.N.Y January 12, 2018) (dismissing claim where plaintiff "has not plausibly alleged that his current mattress or the absence of a mattress either exacerbated or caused" his chronic pain and other ailments).

### (b)   Subjective Prong

Plaintiff also fails to satisfy the subjective prong of the Eighth Amendment analysis because he fails to plead that Dr. Davydov *knew* that failing to provide Plaintiff with a special mattress caused an excessive risk to Plaintiff's health and disregarded this risk.   To satisfy the subjective component of a deliberate indifference claim "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U .S. 825, 834, (1994); *see also Seymore v. Dep't of Corr. Servs.*, No. 11 Civ. 2254, 2014 U.S. Dist. LEXIS 21404, at *4 (S.D.N.Y. Feb. 18, 2014) (dismissing deliberate indifference claim for failure to plead that prison officials possessed a sufficiently culpable state of mind, where the plaintiff alleged that the defendants knew about the conditions, and "at most, alleged that various defendants were negligent in failing to correct conditions, not that any defendant obdurately and wantonly refused to remedy a specific risk to the plaintiff"); *Pabon v. Wright*, 99-CV-2196, 2004 U.S. Dist. LEXIS 5565, at *15, 2004 WL 628784 (S.D.N.Y. Mar. 29, 2004) (requiring "intentional or criminally reckless conduct" to satisfy the subjective prong).

Plaintiff alleges that he "informed [Dr. Davydov] of the. . .  medical procedure and explained the problems and pain that his mattress was causing."  (Compl. ¶ 38).  However, Plaintiff does not plead that Dr. Davydov actually knew that denying Plaintiff a special mattress would in fact lead to excessive pain; for example by pleading that Dr. Davidov reviewed medical records recommending a special mattress.  Moreover, as discussed, *supra*, Plaintiff does not even

sufficiently plead that the lack of a special mattress would cause "serious damage to his future health," *Santiago*, 2016 U.S. Dist. LEXIS 20016, at *5-6, which is a necessary precondition to finding that Dr. Davidov ignored such a risk.  Accordingly, the Complaint fails to satisfy the subjective prong of the Eighth Amendment analysis.

### POINT II - PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF HIS CONSTITUTIONAL RIGHTS RESULTING FROM THE ALLEGED STRIP SEARCHES

**A.      Plaintiff Fails to State a Claim for Violation of his Fourth Amendment Rights**

Strip searches of inmates do not violate the Fourth Amendment so long as the strip search is "reasonably related to legitimate security interests," a determination that is "within the province and professional expertise of corrections officials."  *Florence v. Bd. of Chosen Freeholders*, 132 S. Ct. 1510, 1517 (2012).

Strip searches of inmates prior to and returning from court visits – such as those alleged by Plaintiff – are constitutional, since they are considered "reasonably related to legitimate security interests," including preventing the smuggling of contraband into or out of the facility.  *See Gaines v. City of N.Y.*, No. 15-CV-2630 (RRM) (RER), 2016 U.S. Dist. LEXIS 136951, at *9 (E.D.N.Y. Sep. 28, 2016) (quoting *Florence*, 132 S. Ct. at 1516-1517); *see also Smith v. City of New York*, No. 14-CV-5934 (JCF), 2015 U.S. Dist. LEXIS 81337, at *5-6, 2015 WL 3929621 (S.D.N.Y. June 17, 2015) ("Courts in this district . . . find that strip searches of inmates upon departure and return from court appearance are constitutional given the interest in preventing contraband from being moved into or out of jail facilities"); *Thompson v. City of N.Y.*, 16 Civ. 824 (PKC), 2017 U.S. Dist. LEXIS 70423, 2017 WL 1929552 (S.D.N.Y. May 9, 2017) ("The general practice of strip searching a detainee [or convicted prisoner]  . . . on the way to and from court appearances is not unconstitutional") (collecting cases).  Here, all the strip searches alleged in the Complaint occurred when Plaintiff was going to and returning from court

appearances; thus, all were "reasonably related to legitimate security interests," *Gaines*, 2016 U.S. Dist. LEXIS 136951, at *9 and constitutional.

   Plaintiff claims that the strip searches at the "search Facility" took place in front of other inmates and female officers (Compl. ¶¶ 47-49, 53-54); nonetheless, the presence of other inmates or female correction officers does not make an otherwise constitutional search unconstitutional. *See Montgomery v. Hall*, No. 11-CV-4645 (PAC) (GWG), 2013 U.S. Dist. LEXIS 103129, at *12 (S.D.N.Y. May 14, 2013) ("Case law reflects that the constitutionality of a strip search is not negated by the presence of other inmates and employees of the facility — of either sex — during the search.") (collecting cases), *report and recommendation adopted*, 2013 U.S. Dist. LEXIS 102213, 2013 WL 3816706 (July 22, 2013); *Israel v. City of N.Y.*, 2012 U.S. Dist. LEXIS 144712, at *8 -9, 2012 WL 4762082 (S.D.N.Y. Oct. 5, 2012) ("The presence of other inmates and officers, males and females, does not alter this determination" that such strip searches do not constitute a Fourth Amendment violation"); *Miller v. Bailey*, 2008 U.S. Dist. LEXIS 31863, 2008 WL 1787692, at *9 (E.D.N.Y. Apr. 17, 2008) ("strip searches of prisoners in the presence of other inmates and staff [are] not constitutionally defective, especially in light of legitimate security concerns") (citing cases).

   Similarly, the allegations that the strip searches at the "search Facility" were filmed (Compl. ¶¶ 47, 52) does not does not make the strip searches unconstitutional. *See Walker v. Ponte*, No. 14 Civ. 8507 (ER), 2016 U.S. Dist. LEXIS 110062, 2016 WL 4411415 (S.D.N.Y. Aug. 18, 2016) ("That the strip searches were carried out in front of cameras . . . does not counter [the legitimate security interest of discovering contraband]"; *Smith v. City of New York*, 2015 U.S. Dist. LEXIS 81337, *7, 2015 WL 3929621 (S.D.N.Y. June 17, 2015) ("neither the presence of cameras . . . makes an otherwise constitutional strip search unconstitutional"); *Dye v.*

9

*City of New York*, 09 Civ. 2460 (RJS) (RLE), 2011 U.S. Dist. LEXIS 76689 (S.D.N.Y. Mar. 29, 2011) (collecting cases from various district courts allowing video recording of strip searches), *recommendation adopted*, 2011 U.S. Dist. LEXIS 76914 (July 15, 2011).

The fact that the John Doe officers at the "search Facility" allegedly yelled and cursed at Plaintiff prior to the alleged strip search (Compl. ¶¶ 45, 51), or threatened him if he failed to comply (*Id.* ¶¶ 50, 55) is not a constitutional violation, since verbal abuse and threats do not state a constitutional violation. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam) (holding that verbal harassment by prison guards in the absence of any appreciable injury does not state a claim under § 1983); *Rodriguez v. Fergunsen*, No. 18-CV-5826 (CM), 2019 U.S. Dist. LEXIS 21028, at *7 (S.D.N.Y. Feb. 1, 2019) ("verbal abuse, threats, and intimidation standing alone, without injury or damage, do not amount to a constitutional deprivation"); *Roundtree v. City of N.Y.,* No. 15cv8198, 2018 U.S. Dist. LEXIS 51919 at *15 ("Courts have consistently held that the mere allegation of verbal abuse [by correction officers]. . . does not rise to the level of a constitutional violation and is not cognizable under § 1983") (citations omitted); *Holland v. City of New York*, 197 F. Supp. 3d 529, 546 (S.D.N.Y. 2016) (verbal threat without more insufficient to state claim under section 1983) (citing cases).

Plaintiff does not name any defendants who are responsible for the strip searches at GMDC (Compl. ¶¶ 43, 56), which is grounds for dismissal. *See Hodge v. Sidorowicz*, 10 Civ. 428 (PAC) (MHD), 2010 US Dist LEXIS 142308, at *61 (S.D.N.Y. Nov. 2, 2010) (dismissing complaint where plaintiff failed to name nurses allegedly responsible for falsification of medical records); *Hughes v. U.S. Postal Service*, 700 F. Supp. 779 (S.D.N.Y. 1988) (dismissing claim for failure to name the proper defendant).

It is unconstitutional for inmates to be strip searched a second time, shortly after the first, when the inmate has been under continuous surveillance, since "[u]nder these circumstances it seems clear that there was no possibility that [plaintiff] could have obtained and concealed contraband." *Hodges v. Stanley*, 712 F.2d 34, 35 (2d Cir. 1983). However, such facts do not apply to either of the alleged strip searches at the "search Facility."

With regard to the alleged April 14, 2015 search at the "search Facility," which Plaintiff claims occurred after a search at GMDC, Plaintiff has not plead that the John and Jane Doe correction officers knew that he had already been searched at GMDC. Moreover, as Plaintiff alleges that several correction officers "boarded the bus with gas masks armed with canisters of a chemical agent known as KM9," such actions could have been taken in response to information that one of the inmates obtained contraband. Thus it is by no means "clear that there was <u>no</u> possibility that [plaintiff] could have obtained and concealed contraband." *Hodges*, 712 F.2d at 35 (emphasis added).

The search that allegedly took place on April 22, 2015 at the "search Facility" was the first search that took place following court; thus, that search is constitutional. Plaintiff alleges that the second search that took place on April 22, 2015 was at GMDC; however, as just discussed, any claim regarding the April 22, search at GMDC must be dismissed for failure to name the responsible defendants.

Accordingly, Plaintiff's claim that the alleged strip searches violate his Fourth Amendment rights must be dismissed.

**B.    Plaintiff Fails to State a Claim for Violation of his First Amendment Rights**

Plaintiff alleges that "he was registered under the Jewish faith and was not supposed to disrobe in the presence of other inmates" (Compl ¶¶ 48, 53), and, thus, that the strip search in the presence of other inmates violated his right to freedom of religion. *See* Complaint

("Third Cause of Action . . . Religious Violation").  This claim must be rejected since it is identical to claims of Muslim inmates that strip searches violate their First Amendment rights, which numerous courts have rejected.

"[C]ourts in this District have consistently rejected claims that standard strip searches violate the First Amendment rights of Muslim inmates whose religion might forbid them from being seen naked by other individuals."  *Pizarro v. Bd. of Corr.*, No. 16-cv-2418 (RJS), 2018 U.S. Dist. LEXIS 120026, at *16, 2018 WL 3462512 (S.D.N.Y. July 17, 2018) (citations omitted).  These courts have reasoned that "impingements on a prisoner's constitutional rights—including religious rights—that are rationally related to a legitimate penological interest are permissible."  *Jean-Laurent v. Lawrence*, 2013 U.S. Dist. LEXIS 38004, at *29, 2013 WL 1129813 (S.D.N.Y. Mar. 19, 2013).  Accordingly, "[r]easonable strip searches of prisoners, regardless of their religion, are generally acceptable under the First Amendment because they further the compelling governmental interest of penological safety."  *Rainey v. Ponte*, 2017 U.S. Dist. LEXIS 119804, at *11-12, 2017 WL 3267746 (S.D.N.Y. July 28, 2017); *see also Hurley v. Ward*, 549 F. Supp. 174 186 (S.D.N.Y. 1982) ("the religious tenets of the Muslims in the prison setting must give way to penological and security requirements of the prisons").

Here, even if the alleged strip searches of Plaintiff prior to and upon the return from court impinges on Plaintiff's freedom of religion, they are "rationally related to a legitimate penological interest," of preventing the smuggling of contraband into or out of the facility.  *See supra*, Point II.A.  Thus, the strip searches do not violate Plaintiff's First Amendment rights, and, like the Muslim plaintiffs in *Pizarro, Jean-Laurent,* and *Hurley*, Plaintiff's First Amendment claim must be dismissed.

**C.       The John and Jane Doe Correction Officers are Entitled to Qualified Immunity**

"Government actors are entitled to qualified immunity 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 432-33 (2d Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in the litigation."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The Supreme recently affirmed that law is "clearly established" only if there is an unequivocal body of law which precedes the conduct in question:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent.  The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority. It is not enough that the rule is suggested by then-existing precedent.  The precedent must be clear enough that <u>every</u> reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.  Otherwise, the rule is not one that every reasonable official would know.

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (citations omitted) (emphasis added).

The Supreme Court recently also affirmed the importance of a fact specific analysis in determining whether the unlawfulness of certain conduct has been clearly established:

> The clearly established standard [] requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  This requires a high degree of specificity.

*Id.* at 590 (citations omitted).   In sum, as the Supreme Court reiterated, "[t]his demanding standard protects all but the plainly incompetent or those who knowingly violate the law."  *Id.* at 589.

At the time of the alleged strip searches, it was not "clearly established" that conducting a strip search before and after court appearances of a religious inmate who claimed it was against his religion to "disrobe in the presence of other inmates" (Compl. ¶¶ 48, 53) violated the inmate's Fourth and First Amendment rights.   Indeed, as discussed, *supra,* Point II.A-B, conducting such a strip search does <u>not</u> violate either of these rights, and, correspondingly, a reasonable correction officer would not have believed such conduct was unlawful.

Though Plaintiff alleges that female correction officers were present during the strip search, he does not allege that their presence violates his First Amendment rights. However, even if Plaintiff had made such an allegation, the John and Jane Doe officers are protected by qualified immunity because it is not "clearly established" that a strip search of a religious inmate in the presence of female officers violates that inmate's First Amendment rights.

Significantly, in two decisions just prior to the strip searches alleged in the Complaint, which occurred in 2015, the Southern District held the individual correction officers in a similar situation to the John and Jane Doe defendants were entitled to qualified immunity because the law was not clearly established.   *See Woodward v. Perez*, 2014 U.S. Dist. LEXIS 121329, at *4-5, 20-22, 2014 WL 4276416 (S.D.N.Y. Aug. 29, 2014) (granting qualified immunity where Muslim inmate returning to the correctional facility from court informed the defendant officers that his faith forbade him from being undressed in the presence of women, yet a female officer "saw him completely nude"); *Jean-Laurent v. Lawrence*, 2013 U.S. Dist. LEXIS 38004,at *5-6, 30-31, 2013 WL 1129813 (S.D.N.Y. Mar. 19, 2013) (granting qualified immunity

14

where Muslim inmate returning to the correctional facility from court informed the defendant officers that his faith forbade him from being undressed in the presence of women, yet was "fully nude" in the presence of a female officer). In both *Woodward* and *Jean-Laurent,* the Southern District reasoned that there was no Supreme Court or Second Circuit precedent establishing a right of Muslim inmates to not be searched in their underwear in the presence of female officers. *See Woodward*, 2014 U.S. Dist. LEXIS 121329, at *20-21, *Jean-Laurent*, 2013 U.S. Dist. LEXIS 38004 at *30-31. Moreover, in *Jean-Laurent,* the court cited a case in which officers were entitled to qualified immunity when Muslim inmates were completely nude during strip searches in the presence of female officers. *See Jean-Laurent*, 2013 U.S. Dist. LEXIS 38004, at *30-31 (citing *Canedy v. Boardman*, 91 F.3d 30, 34 (7th Cir. 1996) (prison officials and female guard entitled to qualified immunity against Muslim inmate's claim alleging female guards were permitted to see him completely nude)); *cf. Holland v. City of N.Y.*, 197 F. Supp. 3d 529, 537-45 (S.D.N.Y. 2016) (granting qualified immunity because "there was no clearly established rule that, during a lockdown or other exigent situation, a correction officer is prohibited from conducting a strip search and viewing the private parts of a Muslim inmate of the opposite sex").

Thus, even if Plaintiff had alleged that the strip searches in the presence of female correction officers violated his First Amendment rights –which he does not— the John and Jane Doe officers are still entitled to qualified immunity because, in 2015, there was no clearly established law that such strip searches violated Plaintiff's rights.

### POINT III - THE COMPLAINT FAILS TO SUFFICIENTLY ALLEGE THE PERSONAL INVOLVEMENT OF DEFENDANT PONTE

While the Complaint names DOC Commissioner Ponte as a Defendant, it contains no substantive allegations against him. As the Second Circuit has made clear, "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (internal quotations omitted).

Personal involvement in a § 1983 violation may be shown by evidence that the official: (1) participated directly in the violation; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in supervising subordinates who caused the unlawful acts; or (5) exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring. *See Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Plaintiff nowhere alleges that Commissioner Ponte took any action falling within one of these five categories. Indeed, the Complaint only mentions Commissioner Ponte, in the caption, the list of Defendants, and a paragraph alleging boilerplate assertions of municipal liability, *see, infra*, Point IV.  *See, e.g., Dove v. Fordham Univ*., 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) ("It is well-settled that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted").  Because Plaintiff fails to assert facts suggesting that Commissioner Ponte was personally involved in his alleged constitutional harm, the claims against Commissioner Ponte should be dismissed.

**POINT IV - PLAINTIFF FAILS TO STATE A CLAIM FOR MUNICIPAL LIABILITY**

Plaintiff also fails to state a Fourth Amendment and First Amendment claim for municipal liability against the City, and an Eighth Amendment claim for municipal liability against

the City and Corizon.[2]  A municipality may not be sued under § 1983 based on a theory of *respondeat superior.  See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-94 (1978).  Rather, municipal liability attaches only if a plaintiff can "identify a municipal policy or custom that caused the plaintiff's injury" and "demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997).

As an initial matter, where there is no underlying constitutional violation, the Court need not address the municipal defendants' liability under *Monell.  See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).  For the reasons articulated *supra*, Plaintiff has failed to state a constitutional claim; accordingly, Plaintiff has failed to state a claim for municipal liability.

Moreover, conclusory allegations that merely allege the existence of a municipal policy, without more, do not state a claim for municipal liability.  *See Missel v. County of Monroe*, 351 F. App'x 543 (2d Cir. 2009); *see also Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 124 (2d Cir. 1991) ("an allegation of municipal policy or custom would be insufficient if wholly conclusory").  Plaintiff asserts that that "Rikers Island and Corizon Health Inc. []policy prohibits [doctors] from issuing any form of special mattress no matter what the problem" (Compl. ¶38, 39); that Commissioner Ponte "instituted an unconstitutional Department wide policy for illegal body cavity strip searches," (*id.* ¶12); and that the searches alleged in the Complaint were conducted pursuant to a new policy (*id.* ¶¶ 49, 54).  These are precisely the type of conclusory allegations that are insufficient to state a claim for municipal liability.

---

[2] Corizon may be treated as a municipal actor.  *See Grimmett v. Corizon Med. Assocs. of N.Y.*, No. 15-CV-7351 (JPO) (SN), 2017 U.S. Dist. LEXIS 79794, at *13 (S.D.N.Y. May 24, 2017).

For purposes of municipal liability, a "custom" must be so entrenched and well-established as to constitute a practice with the force of law. *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226. Plaintiff alleges that on two occasions within the statute of limitations he was denied a "special mattress" and told by doctors at GMDC about the alleged mattress policy. He also alleges on two occasions he was strip searched at a "search Facility" and informed by correction officers of these searches were pursuant to a new strip search policy. However, two instances of an alleged constitutional violation are not sufficient to demonstrate a custom for the purposes of *Monell* liability, particularly if the same individual alleges both violations. *See, e.g., McLaurin v. New Rochelle Police Officers*, 373 F. Supp. 2d 385, 401 (S.D.N.Y. 2005), *aff'd in part, vacated on other grounds*, 2007 U.S. App. LEXIS 1839, 2007 WL 247728 (2d Cir. Jan. 25, 2007) ("one man's experience does not make a policy"); *Prince v. County of Nassau*, 837 F. Supp. 2d 71, 104 (E.D.N.Y. 2011), *aff'd*, 563 Fed. App'x 13 (2d Cir. 2014) (dismissing *Monell* claim where plaintiff proffered evidence only as to purported harassment that occurred with respect to his bars, but not with any other establishments); *see also Rubio v. Cty. of Suffolk*, 328 F. App'x 36, 38 (2d Cir. 2009) ("a few violations by a small group of subordinate County employees with no policymaking authority [cannot] amount to the pervasive and widespread custom or practice necessary for municipal liability"); *Giaccio v. City of N.Y.*, 308 F. App'x 470, 472 (2d Cir. 2009) (dismissing *Monell* claim where plaintiff "identifie[d], at most, only four examples" of the alleged constitutional violation); *Calicchio v. Sachem Cent. Sch. Dist.*, 185 F. Supp. 3d 303, 316 (E.D.N.Y. 2016) ("courts in this Circuit have rejected the notion that two, three or even four incidents will support such an inference [of a municipal policy or custom]" (citations omitted)).

18

In addition, Plaintiff seeks to hold the City liable because Commissioner Ponte "failed to train his Supervisors, Officers, and Staff." (Compl. ¶ 12). A municipality may be liable on a failure to train theory only if the plaintiff can "identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) (citation omitted); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 540 (S.D.N.Y. 2012) ("Plaintiff's mere claim that the Town failed to train and supervise its police officers is a boilerplate assertion and is insufficient, without more, to state a *Monell* claim") (quotations omitted). Here, Plaintiff failed to assert any facts to support his failure to train allegation; thus, this claim should be dismissed as a matter of law.

### POINT V - PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES

Plaintiff seeks one million dollars in punitive damages. (Compl. ¶ 58). However, Plaintiff may not obtain punitive damages from Commissioner Ponte, Dr. Davydov or the John and Jane Doe correction officers (the "Individual Defendants") to the extent that they are sued in their official capacity. *See Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) ("[a] claim asserted against an individual in his official capacity. . . is in effect a claim against the governmental entity itself, rather than a suit against the individual personally"); *see also Newport v. Fact Concerts*, 453 U.S. 247 (1981) (punitive damages not available against a municipality).

In addition, Plaintiff has not pled any allegations demonstrating that the Individual Defendants acted maliciously, and, thus, he may not recover punitive damages against them in their individual capacity. *See Ivani Contr. Corp. v. City of New York*, 103 F.3d 257, 262 (2d Cir. 1997) (plaintiff's claim for punitive damages not actionable against municipal officers sued in their individual capacities in the absence of allegations demonstrating "evil motive or intent" or "callous indifference") (internal quotations omitted).

19

Plaintiff's claim for punitive damages should, accordingly, be dismissed.

## CONCLUSION

For the foregoing reasons, City Defendants respectfully requests that the Complaint be dismissed in its entirety, that Plaintiff's requested relief be denied in all respects, and that City Defendants be granted such other and further relief as the Court deems just and proper.

Dated:        New York, New York
              April 5, 2019

ZACHARY W. CARTER
Corporation Counsel of the
City of New York
*Attorney for Defendants City of New York,*
   *Corizon Health, Inc., Commissioner*
   *Ponte, and Dr. Davydov*
100 Church Street
New York, NY 10007
Tel: (212) 356-0873
Fax: (212) 356-2089
ssprayre@law.nyc.gov


By:        _____/s/_____

Sharon Sprayregen
Assistant Corporation Counsel