UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
Michael Jones,

                              Plaintiff,

     -against-

The City of New York, et al,            18-CV-1937(VSB/GWG)

                            Defendant.
------------------------------------------------------------X

# **MEMORANDUM OF LAW**



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6-25-19

2

## **PRELIMINARY STATEMENT**

Plaintiff, Michael Jones, *pro se*, complaint provided factual allegations sufficient to survive a motion to dismiss. Specifically, plaintiff pleaded that: 1) the conditions of his mattress were objectively intolerable, and denied him the "minimal civilized measure of life's necessities," because the mattress was only one inch in thickness, caused extreme lower and upper back pain. Stiffness in his lower back, muscle spasms, shoulder pain, sleep deprivation, numbness in the hipbones, and difficulty standing as a result of the extreme back pain; 2) the defendant's knew about, but ignored, the risks of those conditions posed; and 3) the defendant's subjected plaintiff to unreasonable strip searches.

In defendant's brief, they do little to counter the sufficiency of the above allegations. They argue that plaintiff, 1) fail to state a calm for inadequate bedding, 2) fail to state a claim of constitutional rights resulting from the alleged strip searches, 3) fail to sufficiently allege the personal involvement of defendant Ponte, 4) fail to state a claim for municipal liability, and 5) plaintiff is not entitled to punitive damages. Their brief misstates (or misunderstands) what plaintiff actually pleaded. Rather, as explained in the Complaint, the mattress was not adequate for a person with plaintiff's medical condition, and plaintiff was subjected to illegal strip/cavity searches and religious violations.

# POINT – I

## A – JUDICIAL-SCREENING:

First and foremost, under the Prison Litigation Reform Act, a District Court is saddle with the task of Judicial-screening at the beginning of a case to consider whether a plaintiff's complaint states a claim for the purpose of 42 U.S.C. §1983. This requirement relates to the "failure to state a claim" provision of 28 U.S.C §1915(e)(2)(B)(ii).

The power conferred in 28 U.S.C §1915(e)(2)(B)(ii); 28 U.S.C. §1915(a)(b)(1); and 42 U.S.C. §1997(e)(c), gives Federal Courts during the screening process in all cases the authority to dismiss *sua sponte* those that they find to be "frivolous, malicious, or failure to state a claim." See, <u>Carr v. Dvorin</u>, 171 F. 3d 115 (2d Cir. 1999) (ground for dismissal on review, the court shall identify cognizable claims or dismiss the complaint if the complaint … fails to state a claim upon which relief may be granted); Cf. <u>McEachin v. McGuinnis</u>, 357 F. 3d 197 (2d Cir. 2004) (district court dismissed … complaint pursuant to 28 U.S.C §§1915A and 1915(e)(2)(B), which provide for the judicial screening of civil action filed by prisoners against governmental entities or the officers, and for the dismissal of claims that … fail to state a claim).

Here, this Court provided a well-written option dated May 15, 2018, setting forth its reasoning as to why plaintiff's complaint contained enough factual allegations concerning deliberate indifference to serious medical needs against defendants "City of New York, Corizon Health, Inc., Rostislav Davydov, and Olga Segal based on the alleged denial of a medically necessary mattress. (Ex – A, at *4).

Most notable, this Court took care after a thorough review of plaintiff's complaint and found that the "Food Poisoning Claim" could not be sustained and promptly dismiss it because it did not rise to the level of a constitutional violation, citing, <u>Moore v. Gloucester Cnty. Jail</u>, No. 13-CV-6943(RBK)(AMD), 2014 WL 3870255, at *5 (D.N.J. Aug. 7, 2014). The Court did not decide on the issue of unlawful search by the John Doe defendants.

## B – JUDGMENT ON THE PLEADINGS:

As this Court is well aware, the test at the motion to dismiss stage is not whether plaintiff is going to prevail at trial; it is whether plaintiff has adequately pleaded conditions that plausibly suggest a First, Forth, and Eighth Amendment violation. <u>Chance v. Armstrong</u>, 143 F. 3d 698, 701 (2d Cir. 1998), *citing*, <u>Gant v. Wallingford Bd. of Educ.</u>, 69 F. #d 669, 673 (2d Cir. 1995).

4

In order to state a claim upon which relief can be granted, a complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the ground upon which it rests." See, Federal Rule of Civil Procedure §8(a)(2); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

When the complaint fails to comply with the requirements of Federal Rule of Civil Procedure §8, a court has the power, on motion or *sua sponte*, to dismiss the complaint or to strike such parts as are redundant of immaterial. <u>Simmons v. Abruzzo</u>, 49 F. 3d 83, 86 (2d Cir. 1995). Most importantly, dismissal under Rule §8, is usually reserved for those cases in which the complaint is so confused, ambiguous, vaguer, or otherwise unintelligible that its true substance, if any is well disguised. Id. at 86.

The function of the pleading standard is to provide the defendants with fair notice of the claims being asserted against them so they can prepare defenses and for trial, and to prevent placing an unjustified burden on the court of wading through irrelevant material. See, <u>Salahuddin v. Cuomo</u>, 861 F. 2d 40, 42 (2d Cir. 1988).

Here, this Court's extensive and detailed initial order provided defendant with fair notice of the claims asserted against them. If the Court had been inclined to dismiss the deliberate indifference claim for failure to state a claim, it would have, as it did *sua sponte* for the "Food Poison" claim at it's initial review. Instead, the Court accepted the burden of summarizing and analyzing the complaint, and dismissed that cause of action.

Because of such, defendants' motion to dismiss for failure to state a claim should be denied on the above ground alone. *e.g.*, <u>Phelps v. Kapnolas</u>, 308 F. 3d 180, 183 (2d Cir. 2002) (untimely dismissal may prove wasteful of the court's limited resources rather than expeditious, for it often leads to a shutting of the lawsuit between the district and appellate court), *quoting*, <u>Lewis v. New York</u>, 547 F. 2d 4, 6 (2d Cir. 1976).

## POINT – II
## DELIBERATE INDIFFERENCE VIOLATION

Defendant's deliberate indifference opposition must fall because the cases cited by defendants are materially different from the claim as set forth in Plaintiff's complaint. See, defendant's Memorandum of Law, at *6-7, citing, <u>Daly v. New York City</u>, 2017 U.S. Dist. LEXIS 82209, at *8, 2017 WL 2364360 (S.D.N.Y. May 30, 2017), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 106963, 2017 WL 2963502 (S.D.N.Y. July 11, 2017); <u>Nelson v.</u>

5

*New York City*, No. 16-CV-6352, 2017 U.S. Dist. LEXIS 107946, 2017 WL 2983885, at *3 (S.D.N.Y. July 12, 2017), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 118082, 2017 WL 3207789 (S.D.N.Y. July 27, 2017); Howard v. city of New York, No. 12-CV-4069 (PAE)(JCF) et al., 2012 U.S. Dist. LEXIS 186204, at *27, 2012 WL 7050623 (S.D.N.Y. Dec. 20, 2012), *report and recommendation adopted*, 2013 U.S. Dist. LEXIS 21509, 2013 WL 504164 (S.D.N.Y. Feb. 11, 2013); and Turner v. The City of New York, 2017 U.S. Dist. LEXIS 205235, at *6 (S.D.N.Y. Dec. 12, 2017), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 6034, 2018 WL 401513 (S.D.N.Y. Jan. 12, 2018).

For example, in *Daly*, a case in which no objections were made, the court held that plaintiff "only" complained about being "forced" to use a mattress on a "foundation" in contravention of the "instruction tag" intended it to be used "without a foundation," but fail to link his ailments to support misuse of the "non-foundation" mattress. *Quoting*, Howard v. city of New York, No. 12-CV-4069 (PAE)(JCF) et al., 2012 U.S. Dist. LEXIS 186204, at *27, 2012 WL 7050623 (S.D.N.Y. Dec. 20, 2012), *report and recommendation adopted*, 2013 U.S. Dist. LEXIS 21509, 2013 WL 504164 (S.D.N.Y. Feb. 11, 2013)

Likewise, in *Nelson*, the court held that plaintiff fail to name a defendant that required him to sleep on a mattress with a "foundation" in contravention of the "instruction tag" intended it to be used "without a foundation," and fail to link his ailments to the "non-foundation" mattress. Moreover, the warning label on the mattress relates "not to chiropractic health, but to fire safety." *Id*. at 2-3.

And, *Turner*, another case where plaintiff fail to file an opposition, or make any objections, the Court held that plaintiff did not allege any facts to infer that he made his condition known to defendants or the denial of a second mattress by a defendant who knew of or should have known but disregarded a risk to his health. Id. at *3. No such allegations were made in plaintiff's complaint.

## DELIBERATE INDIFFERENCE STANDARD:

To defeat a motion to dismiss pursuant to Rule 12(b)(6), plaintiff is obliged to establish that defendants were deliberately indifferent to his serious medical need. *See*, Farmer v. Brennan, 511 U.S. 825, 834 (1994). This standard consists of both objective and subjective components. Objectively, the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists.

*Hathaway v. Coughlin*, 99 F. 3d 550, 553 (2d Cir. 1996). Subjectively, the charged official must act with a sufficiently capable state of mind, something more than mere negligence and akin to criminal recklessness. *Id.*, accord *Salahuddin v. Goord*, 467 F. 3d 263, 280 (2d Cir. 2006)

## **OBJECTIVE PRONG:**

First, a condition of an inmate's mattress may be so inadequate as to constitute an unconstitutional deprivation. *See, Garraway v. Griffin*, 707 Fed. Appx. 16, 19 (2d Cir. 2017) (genuine issues of material fact as to whether defendants' knew that *Garraway's* mattress was soiled with human waste); *Walker v. Schult*, 717 F. 3d 119 (2013); *Bell v. Luna*, 856 F. Supp. 2d 388, 392-93 (D. Conn. 2012) (failure to replace a mattress which was defective, unhygienic, and grossly inadequate which causes substantial pain and a loss of restful sleep may plausibly describe an unconstitutional condition of confinement); *Santiago v. Ponte*, No. 14-CV-6473, 2016 WL 680823, at *2 (S.D.N.Y. Fed. 18, 2016) (*Walker* held that the adequacy of a mattress may, alone or in combination with other factors, constitute a condition that satisfies the objective prong of the condition of confinement that causes or threatens to cause sufficiently serious harm); *Lareau v. Manson*, 561 F. 2d 96, 105 (2d cir. 1981) (prison's use of floor mattresses ... unconstitutional without regard to the number of days for which a prisoner is so confined); *See, e.g., Oladipupo v. Austin*, 104 F. Supp. 2d 654 (W.D. La. 2000) (a mattress is a basic human need).

Second, Courts have held that chronic back pain is sufficiently serious to satisfy the objective prong to the Eighth Amendment. *See, Arriaga v. Gage*, WL 1750320 (S.D.N.Y. April 6, 2018) (severe back pain resulting from herniated and bulging disc, sufficient serious condition); *Williams v. Smith*, WL 2432948, at Q8 (S.D.N.Y. Aug. 10, 2010) (nothing persistent back pain sufficiently serious); *Guarneri v. Hazzard*, WL 552872, at *6 (N.D.N.Y. Sept. 11, 2008) (severe back pain, especially if lasting an extended period of time, can amount to a serious medical need under the Eighth Amendment); *Faraday v. Lantz*. WL 346846, at *5 (D. Conn. Dec. 12, 2005) (persistent complaints of lower back pain caused by herniated, migrated discs and sciatica leading to severe pain constitutes a serious medical need).

Third, sleep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment. *See, Tafari v. McCarthy*, 714 F. Supp. 317, 367 (N.D.N.Y. 2010) (courts have previously recognized that sleep constitutes a basic human need and conditions that prevent sleep violate an inmate's constitutional rights); *Homes v. Grant*, No.

7

03-CV-3426, 2006 WL 851753. at 3, 11-12 (S.D.N.Y. 2006) (denying motion to dismiss for plaintiff's sleep deprivation claim because lights illuminated for 24 hours during his 35 days of confinement while in SHU ... would sustain both the objective and the subjective prongs of an Eighth Amendment analysis).

Forth, The Second Circuit has held that extreme pain in a plaintiff's shoulder was sufficient to survive a claim under deliberate indifference. *See*, <u>Nielson v. Rabin</u>, 746 F. 3d 58, 63 (2d Cir. 2014). In that case, Nielson suffered a labral tear and broken collarbone, and "screamed when his shoulder was touched lightly." Dr. Rabin only minimally examined Nielson, despite his complaints.

Because of the above conduct by Dr. Rabin, the Court state that:

> "we would love to live in a world where it is implausible for a doctor to disregard her oath and refuse to treat a patient ... just as we would love to live in a world where it is implausible for an employer to be so irrational as to refuse to hire a qualified applicant because of the applicant's skin color. Unfortunately, we do not. Taken the allegation on Nielson's complaint and his opposition brief as true, Nielson can plausibly allege that Dr. Rabin acted with a sufficiently culpable state of mind."

Likewise in, *Price v. Reilly*, 697 F. Supp. 2d 344, 362-63 (E.D.N.Y. 2010), citing <u>Brock v. Wright</u>, 315 F. 3d 158, 163 (2d Cir. 2003), the court held that allegations of "severe pain" and "reduced mobility" in the shoulder sufficient to raise issues of fact as to whether a "shoulder injury constitutes a sufficiently serious medical condition to satisfy the objective prong of the deliberate indifference standards." *See also*, <u>Sereika v. Patel</u>, 411 F. Supp. 2d 397, 406, (S.D.N.Y. 2006) (reduced mobility in arm and shoulder, raise issues of fact); <u>Lloyd v. Lee</u>, 570 F. Supp. 2d 556 (S.D.N.Y. 2008) (16 months of chronic shoulder pain constitute deliberate indifference).

In short, from May 2014, through July 2015, plaintiff's inadequate mattresses cause extreme chronic back pain, sleep deprivation, extreme prolong shoulder pain, muscle spasms, numbness in hipbone, and difficulty standing constitutes serious medical need. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976) (deliberate indifference to serious medical needs pf prisoners constitutes the "unnecessary and wanton infliction of pain").

## SUBJECTIVE PRONG:

Here, plaintiff provided his medical records to the intake examiner and a number of defendants upon arrival and during his stay at Rikers Island informing them of his pre-existent medical condition, and his multiple ailments as a result of the inadequate mattress. Plaintiff's medical condition was noted in Roxanne Hobbs-Green's Assessments, and Gauvin informing plaintiff that double mattresses are denied as "per policy." See, Compl. ¶ at 18. (Ex – B).

Among the records that were provided was a copy of the Surgery that was preformed at the Westchester Medical Center that shows that exact operation that was preformed on plaintiff in 2006. (Ex – C);

A copy of Dr. Galeno requirement that plaintiff be provided with a special mattress. (Ex – D);

A copy of the Physical Therapy report showing the extent on plaintiff's condition. (Ex – E); and,

A number of X-Ray reports showing the plaintiff's medical condition dated back to 1996. (Ex – F).

Plaintiff's complaint alleges that he provided the intake examiner with the above medical records and that defendants failed to provide him with a special mattress to relieve the chronic pain cause by the standard issued inadequate mattress that was provided to him even though they were made aware of his medical condition. Taken together, these claims fall into two broad categories. One, an alleged failure to provide essential care, and two, a disregard of the particular care that was required by plaintiff's surgeon, Dr. Galeno. (Ex – D).

Plaintiff's repeatedly complained to defendants over a period of fourteen months, about the pain that the inadequate mattress was causing, beginning in May of 2014, until July of 2015. Thus, the record is well adequate of the number of complaints by plaintiff to establish their awareness of plaintiff chronic pain satisfying the requirements of deliberate indifference. *Hathaway v. Coughlin*, 37 F. 3d 63, 68-69 (holding that, inter alia, two-year delay in surgery despite plaintiff's repeated complaints of pain could support finding of deliberate indifference).

## POINT – III
## FOURTH AMENDMENT VIOLATION

### A – UNCONSTITUTIONAL SEARCH:

Defendant's offer a linage of cases that set forth the standards in which a Forth Amendment violation exist, as well as cite decisional law supporting a conclusion as to what constitutes a proper search procedures. They even go so far as to give hypothetical scenarios to attempt to justify the unconstitutional search, i.e., "Plaintiff have not plead that the John and Jane Doe correction officers 'knew' that he had already been searched." See, Resp. Mem. at 11.

The Constitution does not allow such hypothetical "what if's." The Constitution is sound in its wording and judicial interpretation. See, Marbury v Madison, 5 U.S. 137 (1803) (the principles, therefore, so established, are deemed fundamental. And as the authority, from which they proceed, is supreme, and can seldom act, they are designed to be permanent).

Here Defendants' fail to recognize, or overlooked the most important aspects of plaintiff's complaint concerning the unconstitutional search, "there was no justifiable, and/or legitimate security reason" for conducting the second search after plaintiff had been striped, cavity/searched. Made to walk through a medal detector in only underwear, and placed in a secure holding cell in full view of approximately eight to ten correction officers and Captains. See, Hedges v. Stanley, 712 F. 2d 34 (2d Cir. 1983) (Hedges challenge is not to the validity of predetention searched per se, but instead, the need for a second search); Jean-Laurent v. Wilkerson, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006) (second strip search conducted shortly after first is unrelated to any legitimate interest because the prisoner did not have any opportunity to acquire contraband while under constant supervision by defendant from the time of the first strip search to the second).

The clear holdings of both *Hodges* and *Morgan* is that a redundant or wholly unnecessary strip frisk is presumptively unreasonable. In *Morgan*, Judge Munson did not specifically condemn the redundancy of the second search. Rather, he found that the first search upon the inmate's exit from the SHU was unnecessary. Although *Hodges* condemned the second search of the plaintiff, not the first search as in Morgan, the distinction in irrelevant since the underlying flaw in both cases was the same, the searches were redundant. See also, Turkmen v. Hasty, 789 F. 3d 218, 261 (2d Cir. 2015) (plaintiff were strip searched every time they entered and left their

cell, give rise to a plausible Fourth Amendment claim); <u>Hurley v. Ward</u>, 584 F. 2d 609 (2d Cir. 1978) (unnecessary strip frisks unreasonable and therefore, unconstitutional).

Here, after the first search on April 14, 2015, there was no opportunity for plaintiff to secreted contraband in his body cavities between the time in which he went through the normal body cavity strip-search, which included walking with only underwear on through a medal detector in G.M.D.C., and locked in a Holding Pen to wait for the bus.

The Holding Pen was situated approximately three feet from the officer's desk in full view of approximately eight to ten correction officers and Captains. The wait for the bus was approximately ten minutes. Thereafter, plaintiff was called out of the Holding Pen to board the bus to go to court. At no time did plaintiff come into contact with other inmates who had not been subjected to the same body cavity strip-search, and medal detector procedures.

Likewise, the second search, plaintiff was returning from court, the bus was taken to a search Facility. Plaintiff was forced off the bus and subjected to a body cavity strip-search, which included inspection by a handheld medal detector. Thereafter, he was place back on the bus and driven to G.M.D.C., and subjected to another body cavity strip-search.

During the entire time of the first search at the Search Facility, the boarding of the bus and arrival at G.M.D.C., before the second search, plaintiff was under constant view of the officer's with the gas mask, as well as approximately twenty other male and female officers, some with video cameras. <u>See</u>, <u>N.G. v. Connecticut</u>, 382 F. 3d 225 (2d Cir. 2004) (after being searched upon admission to NHJDC, S.C. was transferred to court, transferred back to NHJDC, and then transferred to GDC. There is no indication that she had any unsupervised opportunity to acquire contraband during these transfers); <u>Vasquez v. Williams</u>, 2015 WL 4757657 (S.D.N.Y. 2015) (Second search … violated the Fourth Amendment); <u>Morgan v. Ward</u>, 699 S. Supp. 1025 (N.D.N.Y. 1988) (second search … unnecessary when it took place shortly after the first, and when the inmate had been under continuous escort).

Here, each searches at the search facility was conducted in a degrading and dehumanizing manner by the use of the threat of bodily harm. Plaintiff was ordered to strip naked while standing on the cold dirty floor with no form of floor mat. Ordered to place his hands on top of his head, spread his legs and bend over and cough five times, open his mouth, and run his hand between his lips, turn around place his hand against the gate, lift up his left and right foot, and inspection by a handheld medal detector. His cloths were thrown on the dirty floor while a

second officer wearing a gasmask armed with a canister of a chemical agent known as MK9, threatening plaintiff stating, "if you fail to comply or say anything, I will spray you in your face. These actions were conducted in the present of female officers, even after plaintiff informed defendants that he was registered under the Jewish faith.

The above conduct clearly illustrates that the search was for the sole purpose of degrading, dehumanizing, intimidation, harass, and to punish with absolutely no rational basic or legitimate penological purpose for the redundant searched. *See, e.g.*, <u>Covino v. Patrissi</u>, 967 F. 2d 73, 80 (2d Cir. 1992), *citing*, <u>Hurley v. Ward</u>, 584 F. 2d 609 (2d Cir. 1978) for the proposition that a strip search accompanied by physical and verbal abuse in unconstitutional.

## B – <u>FIRST AMENDMENT VIOLATION</u>:

Defendants argue that Courts in this Circuit rejected claims that standard strip searches do not violate the First Amendment rights whose religion might forbid them from being seen naked by other individuals. Citing, <u>Pizarro v. Bd. of Corr.</u>, 2018 WL 3462512 (S.D.N.Y. July 17, 2018); <u>Jean-Laurent v. Lawrence</u>, 2013 WL 1129813 (S.D.N.Y. Mar. 19, 2013); <u>Rainey v. Ponte</u>, 2017 WL 3267746 (S.D.N.Y. July 28, 2017); and <u>Hurley v. Ward</u>, 549 F. Supp. 174 (S.D.N.Y. 1982). See, Def. Mem. at 11-12.

There are a number of distinctions between plaintiff factual allegations and the cases that are cited in defendant's memorandum. For example, in *Pizarro*, the record clearly showed that plaintiff never removed his cloths, thereby causing his claim to fail on freedom of religion grounds because the search was reasonable under the circumstances.

In *Rainey*, the court held that there was no violation when plaintiff was strip searched in a Chapel while going to court and he did not allege that he, practice a certain religion, or that any particular tenet of his religions practice or faith was burdened by the filmed strip searches.. Therefore, the strip while "going" to court served a legitimate penological purpose. *Id*. at *4.

In *Jean-Laurent*, plaintiff was returning to Rikers Island as a result of a court trip, was strip searched in the present of female officers. Because the strip search had a legitimate penological purpose, "the return from court," the Court held that it was permissible. *Id*. at. *8-9.

However, in <u>Jean-Laurent v. Wilkerson</u>, 438 F. Supp. 2d 318 (S.D.N.Y. 2006), where the plaintiff was strip searched while in his cell. That search was considered lawful because it served a legitimate penological purpose. Shortly thereafter, when plaintiff informed the defendant's that he could not lift his mattress, he was removed then strip-searched a second time in the present of

female officers, even though he was a registered Muslim. The court then held that the second strip search of plaintiff had no legitimate penological goal, and thereby allowed his case to go forward. *Id.* at 324.

### C – JOHN AND JANE DOE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY:

In *Jean-Laurent v. Wilkerson*, 461 Fed. Appx. 18 (2d Cir. 2012), the Second Circuit "affirmed and agreed" with the lower Court's ruling in plaintiff's First Amended Complaint, that plaintiff sufficiently stated claims under the First Amendment when he alleged that as a Muslim, he is not permitted to be seen naked by stranger, and the "second" strip search had no "legitimate penological purpose." *Id.* at 23. (District Court had previously held, with respect to the First Amended Complaint, that *Jean-Laurent* had sufficiently stated claims under the First Amendment). *Id.* at 23. Relying on, *Jean-Laurent*, the Second Circuits Religious Rights Claim under §1983, analysis was based on a second search that was conducted in view of a female Caption for no other reason but to "intimidate, harass, or punish" plaintiff, even though he inform the defendants that he was Muslim. *Cf. Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d at. 324.

Defendant's cannot "now" argue that the law was not clearly established at the time in which they violated plaintiff's First Amended violation, because *Jean-Laurent v. Wilkerson*, 461 Fed. Appx. 18 (2d Cir. 2012), was decided in 2012, some three years prior to the incident complained about in plaintiff's complaint in 2015.

Thus, defendant's argument citing *Pizarro*, *Rainey*, and *Jean-Laurent v. Lawrence*, have no legs to stand on because *Jean-Laurent v. Wilkerson*, 461 Fed. Appx. 18 (2d Cir. 2012), plaintiff's unreasonable search violation/religious rights claim was "clearly established" precedent during the time of the alleged incidents.

### POINT – IV

### PLAINTIFF'S COMPLAINT SUFFICIENTLY ALLEGE PERSONAL INVOLVEMENT OF DEFENDANT PONTE

Defendant Ponte is the former Commissioner of the New York Department of Corrections employed by the City of New York. As such, he instituted an unconstitutional Department wide policy for illegal body cavity strip-frisk-searches. This conduct was confirmed

13

by a number of John Doe officers at the search facility when they specially stated that, "This is the new policy handed down from the Commissioner." Here, defendant Ponte was aware of such violations because the City has paid out approximately $81 million to settle illegal strip searches over a 15 year history. (Ex – G).

Moreover, defendant Ponte entered into a contract with defendant Corizon Health Inc., that denied plaintiff adequate medical care, by instituting a Department wide policy that disallowed special mattresses for inmates certain medical issues. Defendant's Rostislav Davydov, and Olga Segal confirmed this conduct by stating, "Rikers Island and Corizon, policy prohibits them from issuing any form of special mattress no matter what the problem."

Moreover, when plaintiff informed Provider Yves Gauvin, MD, that the "bed was Killing him," and if he could not receive a special mattress, could he be provided with a double mattress to relieve his pain. Gauvin informed plaintiff that double mattresses are also denied "per policy." (Ex – B).

Defendant Ponte was aware of the unconstitutional conditions of medical care provided by Corizon because of the many News articles that published the results of investigative reports concerning a multitude of inadequate medical care since Corizon was contracted by defendant's. (Ex – H, and I).

Although personal involvement of Ponte at this stage of the proceedings may not be fully developed enough at this time, discovery such be completed to identify who have personal liability. *See*, <u>Soto v. Brooklyn Correctional Facility</u>, 80 F. 3d 34, 37 (2d Cir. 1999) (at least named the superintended of the facility and obtain the names of the responsible officers through discovery).

Once plaintiff has had sufficient discovery to determine who instituted the Department wide policy, and what was Ponte's role is in plaintiff's violations, then plaintiff should be allowed to amend his complaint to specifically state how Ponte's action or inaction violated plaintiff's Forth and Eighth Amendment violations. *See*, <u>Valentin v. Dinkins</u>, 121 F. 3d 72, 75 (2d Cir. 1997).

## POINT – V
## PLAINTIFF STATE A CLAIM OF MUNICIPAL LIABILITY

It is well established that a municipality may not be sued under 42 U.S.C. §1983 for acts of its employees unless a plaintiff can show that their actions were caused by an official policy or

14

custom of the municipality. *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978).

Moreover, in keeping with the pleading requirements imposed by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a plaintiff must give a factual description of such a policy, not just bald allegations that such a thing existed. *See, Davis v. city of New York*, WL 2511734 (S.D.N.Y. 2008).

To hold a municipality liable under §1983 for the unconstitutional acts of its employees, a plaintiff is required to plead and prove three elements: 1) an official policy or custom that, 2) causes the plaintiff to be subjected to the, 3) of a denial of a constitutional right. *See, Wray v. City of New York*, 490 F. 3d 189 (2d Cir. 2009).

A policy or custom may be established by any of the following: 1) the existence of a formal policy officially endorsed by the municipality, 2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of a plaintiff's civil rights, 3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials, or 4) a failure by policymakers to properly train or supervise their subordinates. *See, Parker v. City of Long Beach, 563 Fed.* Appx. 39, 41 (2d cir. 2014) (failure to train); *Matusick v. Erie Cnty. Water Auth.*, 757 F. 3d 31, 61-62 (2d Cir. 2014) (persistent and widespread practice); *Hines v. Albany Police Dep't.*, 520 Fed. Appx. 5, 7 (2d Cir. 2013) (actions of policymakers); *Schnitter v. City of Rochester*, 556 F. Fed. Appx. 5, 8 WL 494893, at *2 (2d Cir. 2014) (failure to train or supervise); *Missel v. County of Monroe*, 351 Fed. Appx. 543, 345 (2d Cir. 2009) (formal policy and act of a person with policymaking authority for the municipality).

## **DEFENDANT CORIZON:**

Defendant Corizon is a private entity with the functional equivalent of a municipality in the context as described in plaintiff's complaint because it provided medical care in prisons, a role traditionally within the exclusive prerogative of the state. *See, Grimmett v. Corizon Med. Assocs. Of New York*, WL 2274485 AT, *5 (S.D.N.Y. May 2017); *Bess v. City of New York*, WL 1164919, at *2 (S.D.N.Y. 2013).

Here, defendant's Rostislav Davydov, and Olga Segal, and Provider Yves Gauvin, MD confirmed the policy of denying special and double mattresses when they stating, "Rikers Island

and Corizon Health Inc.," policy prohibits them from issuing any form of special mattress no matter what the problem. (Ex – B).

Plaintiff was told that defendant Corizon's policy prohibits the issuing of special mattress no matter what the problem from May 2014, through July 2015 approximately 31 times. This constitutes an unconstitutional practice of municipal officials that was persistent and widespread as to constitute a custom or usage with the force of law. *See*, <u>Patterson v. County of Oneida</u>, 375 F. 3d 206 (2d Cir 2004). (Ex – K`').

The Second Circuit has recognized that, in the context of municipal liability, the "policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates unlawful actions." <u>Reynolds v. Giuliani</u>, 506 F. 3d 183, 192 (2d Cir. 2007).

Courts in this circuit have found allegations of municipal inaction in the face of government-documented misconduct through investigations of which defendants were aware, sufficient to state a claim of municipally liability based on policy or custom. *See*, <u>Graham v. County of Erie</u>, WL 1980609, at Q6 (W.D.N.Y. 2012) (denying motion to dismiss where plaintiff "point out several similar situations to the plaintiff's own experience of being denied medical care during ... detention).

Moreover, courts have found that a plaintiff can state a plausible claim of municipal liability by citing cases or complaints in state or federal court alleging similar misconduct against the same set of defendants. *See*, <u>Bertuglia v. City of New York</u>, 839 F. Supp. 2d 703, 738 (S.D.N.Y. 2012) (denying defendant's motion to dismiss plaintiff's claim of municipal liability where the Amended Complaint points to over fifteen cases where City prosecutors allegedly committed misconduct, and alleges the existence of many more such cases, as evidenced by unpublished judicial decisions); <u>Osterhoudt v. City of New York</u>, WL 4481927, at *1 (E.D.N.Y. Sept. 27, 2012) (finding that the plaintiff stated a plausible claim of municipal liability where he "cites a number of complaint alleging that the NYPD conducted mass arrests at demonstrations and in crowd control situations, plausibly alleging a widespread departmental policy of arresting political demonstrators without determining probable cause on an individual basis); <u>Colon v. city of New York</u>, WL 4263362, at *2 (E.D.N.Y. 2009) (finding that plaintiff stated a plausible claim

16

of municipal liability based on a review of "cases in other federal and state courts, which revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department," and "evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy the city approving illegal conduct of the know now charged').

Here, plaintiff can rely on *Man Zhang v. City of New York*, WL 3187343 (S.D.N.Y. 2018). In *Man Zhang*, plaintiff suffered an unfortunate heart attack at the hands of neglect by defendants Corizon, in which the court held that defendants, "the City of New York, Corizon, and a number of its employees" were responsible under the theory of Municipal Liability.

The *Man Zhang* Court based its determination on a 2014, New York State Commission of Corrections report that detailed the inadequate medical services available to Rikers Island detainees, and further allege additional reports of media coverage, and publicity regarding the "systematic general and health care deficiencies and failure. *Id*. at *9. *Cf*, *Kucharczyk v. Westchester Cty.*, 95 F. Supp. 3d 529, 544 (S.D.N.Y. 2015) (complaint accompanied by Department of Justice report identifying widespread practice was sufficient to plausible allege Monell claim). *See also*, *Greene v. City of New York*, WL 5862008 (S.D.N.Y. 2014) (90 prisoners have filed pro se complaint regarding beds).

Moreover, a number of News articles highlight cases of serious major medical neglects and inadequate mattress as early as 2014. The defendant's fail to address those problems and continue to deny any form of special mattress no matter what plaintiff's medical condition was, (Ex – I).

After reading the *Man Zhang* decision, plaintiff wrote to the New York State Commission of Correction requesting a copy of their 2014 report that detailed the inadequate medical service at Rikers Island. The Commission of Correction informed plaintiff that they do not have the requested report. (Ex – J). Plaintiff also wrote to the District Court requesting the Exhibits concerning the *Man Zhang* case.

As such, plaintiff sufficiently allege a "practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of defendant Corizon as a policymaker. (Ex – H, and I).

If the Court finds that plaintiff have not set forth enough to constitute an unconstitutional practice of Corizon as a municipal officials at this stage of the proceedings, then discovery

should be completed to establish municipal responsibility of defendant Corizon. *See*, *Soto v. Brooklyn Correctional Facility*, 80 F. 3d 34, 37 (2d Cir. 1999).

## **DEFENDANT PONTE:**

Defendant Joseph A. Ponte is the former Commissioner of the New York Department of Corrections employed by the City of New York, instituted an unconstitutional Department wide policy for illegal body cavity strip-frisk-searches. Moreover, the John Doe officers at the search facility specially stated that the "Commissioner" handed down the new search policy.

Here, defendant Ponte fail to act on information indication that unconstitutional searches were occurring. In a Daily News article dated June 14, 2014, the author highlighted defendant's "dark history" of illegal strip searches, and the city has doling out $81 million to settle three class action strip search suits over the past "15" years. Nevertheless, defendant Ponte ignored the warnings and made no efforts to stop such illegal strip searches. (Ex. – G).

As such, plaintiff sufficiently allege a "practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of defendant Ponte as a policymaker.

Most importantly, Plaintiff's Exhibit – G, clearly establishes an adequate causal link between the inaction or ineffective response on the part of defendant Ponte and the continued conduct by the John Doe officer's that led to the violation of plaintiff Fourth Amendment violation. *See*, *Bishop v. City on New York*, WL 4484245, at *4 (S.D.N.Y. Aug. 18 2016) (plaintiff's pleading citing statistics and the reports of whistleblowers to establish a widespread practice of defendants).

Moreover, the Bishop Court also relied on facts recounted in *Floyd v. City of New York*, 959 F. Supp. 2d 540 (S.D.N.Y. 2013), to connect the allegation of a widespread policy. Here plaintiff reliance upon Man Zhang and News articles that are sufficient to plausibly allege a municipal policy of widespread practice of violations and constructive knowledge on the part of the defendants as policymakers. *See*, *Man Zhang*, at *9 (additional reports, media coverage, and publicity regarding the systematic general and health case deficiencies and failure and general poor conditions at Rikers sufficiently establish §1983 claim). (Ex – H, and I).

Because of such, defendant's motion to dismiss claims as to the Municipal defendant should be denied.

# POINT – V
## PLAINTIFF IS ENTITLED TO PUNITIVE DAMAGES

Punitive damages are intended to punish the defendants for their conduct and deter them and others from committing similar acts in the future. *See*, <u>Smith v. Wade</u>, 461 U.S. 30, 40-52 (1983). This can only be accomplished by showing that the defendant acted with reckless indifference to plaintiff's rights, ill will, a desire to injure, or malice. *Id*, at. 446-52.

The Supreme Court have held that punitive damages should reflect, 1) the reprehensibility of the defendants conduct, 2) reasonable relationship to the harm the plaintiff suffered, and 3) the presence or absence or sanction. <u>BMW of North America, Inc, v. Gore</u>, 517 U.S. 559, 585 (1996).

In order to obtain punitive damages a plaintiff should show, not merely that the defendant engaged in intentional conduct, by that he did so either with the intent to violate the plaintiff's federal rights, or with a reckless disregard for whether his conduct would violate such rights. *See*, <u>Cameron v, City of New York</u>, 598 F. 3d 50, 69 (2d Cir. 2010) (evidence need only be strong enough for factfinder to infer that defendant acted with malice).

In <u>Wilson v. Aquino</u>, 233 Fed. Appx. 73, 77 (Cir. 2007), the Second Circuit held that the unreasonable search of plaintiff was motivated by evil motive, and affirmed a jury's verdict of punitive damages against defendants individually and as a group. The Court relied upon the testimony of plaintiff that, 1) he was familiar with the defendants prior to the incident, 2) defendant verbally abused him with obscenities suggesting that they were strip searching him because was a drug dealer without regard to any belief that he was then in possession of drugs, 3) each defendant participated in punching and kicking him in the course of forcibly removing his clothes, and 4) at least one defendant physically taunted Wilson during the strip search.

Here, defendant Ponte's continued to enforce a unconstitutional strip search policy by forcing plaintiff to strip by the use of threats with canisters of MK9, verbal abuse, intimidate, harass, or punish" plaintiff, and continued to allowing Corizon to violate constitutional rights after a number of investigations concluded that such conduct was constant for over 15 years.

Such reckless indifference to plaintiff's rights can only lead this Court to draw from defendant's acts a municipal custom or policy was enacted for a number of years with the knowledge of defendant Ponte. See, e.g., <u>Monell v. Department of Social Services on City of</u>

19

*New York*, 436 U.S. 658, 694 (1978) (in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law).

## CONCLUSION

For the above reasons, the defendant's motion to dismiss must be denied in its entirety.

DATE:        June 17, 2019

*[signature]*
Michael Jones, Plaintiff
534 Hunter Street
Ossining, New York 10562