UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MICHAEL JONES,                                        :

                Plaintiff,              :          OPINION AND ORDER

    -v.-                                             :
                                                                                        18 Civ. 1937 (VSB) (GWG)
CITY OF NEW YORK, et al.,                     :

              Defendants.           :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Plaintiff Michael Jones, currently incarcerated at Sing Sing Correctional Facility, brought

this action pro se under 42 U.S.C. § 1983 alleging that defendants violated his rights in various

ways while he was detained at Rikers Island.  See Complaint at 7, filed March 2, 2018 (Docket

# 2) ("Comp.").  Fact discovery concluded on February 21, 2020.  See Order of January 27, 2020

(Docket # 91).  On May 4, 2020, Jones moved for leave to amend his complaint and to extend

discovery.[1]  For the following reasons, Jones's motion for leave to amend is granted in part, and

Jones's motion to extend discovery is denied.

I.      BACKGROUND

      A.    Original Complaint

      Jones's original complaint, dated February 24, 2018, and docketed March 2, 2018,

asserted claims against the City of New York ("the City"), the New York City Department of

Correction ("DOC") Commissioner Joseph A. Ponte, Corizon Health Inc. ("Corizon"), 10

---

[1] Letter from Michael Jones, at 1, filed May 4, 2020 (Docket # 94) ("May 4 Letter"); Letter from
Bruce Brady, filed June 29, 2020 (Docket # 96) ("June 29 Letter"); Letter from Michael Jones,
filed July 17, 2020 (Docket # 98) ("July 17 Letter"); Letter from Bruce Brady, filed July 20,
2020 (Docket # 99) ("July 20 Letter"); Letter from Sharon Sprayregen, at 2-6, filed Aug. 11,
2020 (Docket # 103) ("Aug. 11 Letter"); Letter from Michael Jones, filed Sept. 1, 2020 (Docket
# 105) ("Sept. 1 Letter").

unnamed correctional officers, 17 Rikers Island/Corizon medical staff (collectively, the "medical staff defendants"), and an unnamed "Food Service Administrator."   See Comp. at 2-5, *16.[2] Jones's claims were based on three alleged constitutional violations involving (1) denial of medical treatment; (2) improper strip searches; and (3) food poisoning, all of which allegedly took place between 2014 and 2015 while Jones was incarcerated at Rikers Island.  Id. ¶¶ 8-56.

        1.     Medical Treatment

Corizon contracts with DOC to provide medical services to inmates in DOC facilities, including Rikers Island.  See id. ¶ 13.  In 2006, Jones underwent back surgery, which now requires him to use a special mattress to relieve pressure on his lumbar spine.  See id. ¶¶ 16-17. On May 15, 2014, Jones arrived at Rikers Island.  See id. ¶ 18.  Upon his arrival, Jones informed the intake examiner of his prior surgery, provided copies of his relevant medical records, and requested a special mattress.  See id.  The examiner told Jones that Rikers Island and Corizon policy prohibited the issuance of such a mattress.  See id.  Jones was instead given "a worn down used mattress approximately one inch in thickness with rips in it causing the insulation to come out."  Id. ¶ 19.  Subsequently, Jones experienced "extreme lower and upper back pain, stiffness in his lower back, muscle spasms, shoulder pain, loss of sleep, numbness in his hipbones, and difficulty standing."  Id. ¶ 20.  While at Rikers Island, Jones visited the medical clinic over two dozen times.  See id. ¶¶ 21-39.  On each occasion, Jones informed the medical staff about the pain his mattress caused, but when Jones requested a special mattress, he was told that Rikers Island and Corizon policy prohibited it.  See id.  The complaint asserts Eighth Amendment claims against the medical staff defendants, as well as against Corizon and the City.  See id. at 2-5, 7-12.

---

[2] "*__" refers to page numbers assigned by the ECF system..

2.       Strip Searches

On April 14, 2015, Jones was transported from Rikers Island to a court proceeding.  See

id. ¶ 43.  Before boarding the bus, Jones "went through the normal body cavity strip-search

procedure."  Id.  Jones was then driven to a "search [f]acility."  Id. ¶ 44.  There, a DOC Captain

and three DOC Officers boarded the bus in gas masks, "armed with cannisters of MK9," a type

of pepper spray.  Id.  The DOC Captain and Officers "wore all black uniforms with no

identification tags."  Id. ¶ 45.  The DOC Captain yelled, "listen up, I want all you mother fuckers

off the bus now.  If you give my officers or me any shit, we will spray your ass until you fall out.

Stand up and walk straight off the bus and do not look back or say a word.  This is the new

policy handed down from the Commissioner."  Id.  Jones exited the bus and joined the other

inmates in a line outside the search facility.  See id. ¶ 46.  A female DOC Officer then led a drug-

sniffing dog "up and down the line," while another female DOC Officer took video footage.  Id.

¶ 47.  The dog did not alert.  See id.  A male DOC officer then ordered Jones to enter "a large

open cage."  Id. ¶ 48.  Jones did so and the male DOC officer told Jones to strip naked.  See id.

Jones protested that he was Jewish and therefore could not "disrobe in the presence of other

inmates."  Id.  The male DOC officer "stated that this was the new policy," he "didn't want to

hear what [Jones] had to say," and again ordered Jones to comply.  Id. ¶ 49.  Jones complied.

See id.  During the search, Jones's "cloth[e]s were thrown on the dirty floor" and a second male

DOC Officer threatened to pepper spray Jones's face if he "fail[ed] to comply or sa[id]

anything."  Id. ¶ 50.

On April 22, 2015, Jones was transported from court back to Rikers Island.  See id. ¶ 51.

During that trip, the bus was again taken to a search facility where a second DOC Captain

boarded the bus and yelled, "you guys know the drill, stand up and don't say a word.  Get the

fuck off the bus in a straight line.  This is the new policy, if there is any shit, you will be

sprayed."  Id.  Jones exited the bus.  See id. ¶ 52.  A third female DOC officer led a drug-sniffing

dog "up and down the line o[f] inmates" while a fourth female DOC officer filmed.  Id.  A third

male DOC officer ordered Jones into a "large open cage" and directed him to strip naked.  Id.

¶ 53.  Jones protested that his religious beliefs prevented him from "disrob[ing] in the presence

of other inmates."  Id.  The third male DOC officer "stated that this was the new policy," he

"didn't want to hear what [Jones] had to say," and again ordered Jones to comply.  Id. ¶ 54.

Jones complied.  See id.  During the search, Jones's "cloth[e]s were thrown on the dirty floor"

and a fourth male DOC Officer threatened to pepper spray Jones's face if he "fail[ed] to comply

or sa[id] anything."  Id. ¶ 55.  Jones then re-boarded the bus, which took him back to Rikers

Island.  See id. ¶ 56.  At Rikers Island, Jones "was subjected to another full body cavity strip-

frisk-search."  Id.  The complaint asserts First and Fourth Amendment claims against the City of

New York ("the City"), Commissioner Ponte, the two John Doe DOC Captains, the four Jane

Doe DOC Officers, and the four John Doe DOC Officers.  See id. at 4-5, 7, 12-14.

        3.      Food Poisoning

      Jones's original complaint also asserted a "Cruel and Unusual Punishment" claim based

on a single incident of food poisoning that Jones allegedly suffered on February 25, 2015.  See

id. ¶¶ 40-42.

      B.      May 2018 Order

      On May 15, 2018, Judge Broderick issued an "Order of Service" dismissing some claims

and ordering service as to certain defendants.  See Order of Service, filed May 15, 2018 (Docket

# 7) ("Order of Service").  The Order of Service noted that only claims that arose after February

24, 2015, three years prior to the date Plaintiff gave his Complaint to prison officials, would be

timely.  Id. at 2-3.  Accordingly, the Order of Service dismissed the claims against all the individual medical staff defendants except Drs. Rostislav Davydov and Olga Segal as barred by the applicable statute of limitations.  See id. at 2-4.  The Order of Service also dismissed the claim involving food poisoning, which had been brought against the unnamed "Food Service Administrator."  See id. at 4-5.

With respect to the unnamed correctional officer defendants, listed as "John Doe" or "Jane Doe," Judge Broderick issued an order requiring the New York City Law Department to identify and locate these defendants so that they could be served.  See id. at 5; see generally Valentin v. Dinkins, 121 F.3d 72 (2d. Cir. 1997).  Jones was directed to file an amended complaint within 30 days of learning the John and Jane Doe defendants' identities.  See Order of Service at 5-6.  Before learning of those identities, on July 19, 2019, plaintiff filed an amended complaint, see Amended Complaint, filed July 19, 2019 (Docket # 68), but because he alleged no new relevant facts, Judge Broderick struck the amended complaint from the record.  See Order of July 26, 2019 (Docket # 69) (July 26 Order), at *3-4.

The City received several extensions to comply with its obligation to identify the officers, see Order of July 12, 2018 (Docket # 16); Order of September 10, 2018 (Docket # 20), but then informed Judge Broderick that they could not identify the officers based on the information provided, see Letter from Sharon Sprayregen, filed Oct. 1, 2018 (Docket # 27); Order of October 3, 2021 (Docket # 28); Letter from Sharon Sprayregen, filed Jan. 4, 2019 (Docket # 33).  On February 14, 2020, however, the City provided Jones with the names.  See Sept. 1 Letter at 4.

C.    April 2020 Opinion & Order

In the meantime, the City, Corizon, Dr. Segal, Dr. Davydov, and Commissioner Ponte all moved for judgment on the pleadings.  See Motion for Judgment on the Pleadings, filed Jan. 11,

2019 (Docket # 36); Motion for Judgment on the Pleadings, filed April 5, 2019 (Docket # 53).

On April 4, 2020, Judge Broderick denied Dr. Segal's motion and granted in part the remaining

defendants' motion.  Jones v. City of New York, 2020 WL 1644009 (S.D.N.Y. Apr. 2, 2020).  In

brief, he allowed the following claims to survive: plaintiff's Eighth Amendment claims (relating

to medical treatment) against Dr. Segal, Dr. Davydov, and the City; and plaintiff's Fourth and

First Amendment claims (relating to the strip searches) against the John and Jane Doe

correctional officers, Commissioner Ponte, and the City.  Id. at 18.

Additionally, Judge Broderick stated that the Order of Service might have improperly

dismissed plaintiff's claims (relating to medical treatment) against defendants Jessy Liburd, Yves

Gauvin, and Jorge Villalobos.  Id. at *10.  Nonetheless, plaintiff revised his allegations in his

(later stricken) amended complaint to reflect that his encounters with Liburd and Gauvin

occurred outside the limitations period.  See July 26 Order at 3-4.  Judge Broderick directed

plaintiff to inform the court whether he was going to proceed against these defendants and to set

forth allegations regarding their conduct.  Id. at *11, *18.

D.    Proposed Amended Complaint

On May 4, 2020, Jones responded to Judge Broderick's Opinion & Order, indicating that

he intended to proceed with respect to the claim arising from his March 23, 2015 appointment

with Dr. Villalobos.  See May 4 Letter at *1.  Jones's May 4 letter also included his proposed

amended complaint, id. at *14-28 ("Proposed Am. Comp."), and requested an extension of fact

discovery, which had concluded on February 21, 2020, id. at *1.

As an initial matter, we note that the proposed amended complaint no longer contains the

original complaint's since-dismissed food poisoning allegations.  See Comp. ¶¶ 40-42; Proposed

Am. Comp. ¶¶ 1-55.

Regarding Jones's medical treatment allegations, the proposed amended complaint makes various changes involving dates of visits with Dr. Segal, see Comp. ¶ 39; Proposed Am. Comp. ¶ 39, realleges the original complaint's allegations regarding Dr. Villalobos, see Comp. ¶ 29; Proposed Am. Comp. ¶ 29, and also describes inadequate medical treatment by previously-dismissed medical staff defendants, although it does not list these individuals as defendants, see Proposed Am. Comp. ¶¶ 18-37.

Regarding Jones's strip-search claims, the proposed amended complaint realleges all of Jones's non-dismissed claims against Commissioner Ponte and the City, see Comp. ¶¶ 5, 12, 43-56; Proposed Am. Comp. ¶¶ 5, 12, 40-53, and replaces the unnamed correctional officer defendants with over 30 named individuals, see Comp. ¶ 5; Proposed Am. Comp. ¶ 5. Its section describing the strip-search incidents is altered by the insertion of the actual names of the proposed new defendants, see Proposed Am. Comp. ¶¶ 41-52.

E.   Defendants' Response to the Proposed Amended Complaint and Motion to Extend Discovery

On June 29, 2020, Dr. Segal responded to Jones's May 4 letter, objecting to the inclusion of Jones's new allegation against her. See June 29 Letter. Jones replied on July 17, 2020. See July 17 Letter. Dr. Segal responded on July 20, 2020. See July 20 Letter. The remaining defendants responded to Jones's May 4 letter on August 11, 2020, consenting to the reinstatement of Dr. Villalobos, objecting to the addition of the named correctional officer defendants, and objecting to an extension of discovery. See Aug. 11 Letter. On September 1, 2020, Jones responded to both Dr. Segal's July 20 letter and the remaining defendants' August 11 letter. See Sept. 1 Letter.

F.    <u>Submissions Regarding Jones's Use of the Rikers Island Grievance Process</u>

The original complaint and the proposed amended complaint include identical allegations regarding Jones's efforts to grieve his claims while at Rikers Island.  <u>See</u> Comp. ¶ 6; Proposed Am. Comp. ¶ 6.  Jones's submissions provide more detail on these efforts.  <u>See</u> July 17 Letter at 2-3, *10, *16; Sept. 1 Letter at 2-4, *34-38.  These submissions reflect that Jones filed a grievance about the strip searches on April 24, 2015, and a hearing was conducted four days later.  <u>See</u> Sept. 1 Letter at 2, *34-36.  Jones was told by the hearing officer that the grievance could not be addressed because the incident occurred outside the Rikers Island facility, and that the hearing officer's decision was unappealable.  <u>See id.</u> at 2.  Jones responded that the denial was appealable, and upon Jones's request, the grievance was forwarded to the Warden's office. <u>See id.</u>  Jones wrote a letter to the Warden concerning his grievance on June 1, 2015.  <u>See id.</u> at *38.

G.    <u>Order of Reference & Reinstatement of Defendant Villalobos</u>

On August 30, 2021, Judge Broderick referred this case to the undersigned for general pretrial purposes.  <u>See</u> Amended Order of Reference, filed August 30, 2021 (Docket # 106). This Court then issued an Order of Service as to Dr. Villalobos.  <u>See</u> Order of Service, filed Sept. 1, 2021 (Docket # 107) ("Villalobos Order of Service").  Dr. Villalobos was served by mail on October 5, 2021, and proof of service was filed on November 10, 2021.  <u>See</u> Marshal's Process Receipt and Return Form, filed Nov. 10, 2021 (Docket # 109).

H.    <u>Claims Currently in the Case</u>

The currently operative complaint, that is, Jones's original complaint, alleges the following, non-dismissed claims: (1) an Eighth Amendment claim against Dr. Villalobos; (2) an Eighth Amendment claim against Dr. Davydov; (3) three Eighth Amendment claims (that is,

based on three different dates of treatment) against Dr. Segal; (4) an Eighth Amendment <u>Monell</u> claim against the City and Corizon, respectively; (5) First and Fourth Amendment <u>Monell</u> claims, respectively, against the City; (6) First and Fourth Amendment claims, respectively, against Commissioner Ponte; and (7) First and Fourth Amendment claims, respectively, against each anonymous correctional officer defendant.  <u>See Jones</u>, 2020 WL 1644009, at *18; Villalobos Order of Service.

II.   <u>CONSTRUCTION OF PRO SE FILINGS</u>

Because Jones is a <u>pro se</u> litigant, we hold his submissions "to less stringent standards than formal pleadings drafted by lawyers," <u>Hughes v. Rowe</u>, 449 U.S. 5, 9 (1980) (per curiam) (quoting <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972) (per curiam)), construing them "liberally," <u>e.g.</u>, <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (per curiam) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)), and interpreting them "to raise the strongest arguments that they suggest," <u>Graham v. Henderson</u>, 89 F.3d 75, 79 (2d Cir. 1996) (quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994)).  As a result, we construe Jones's May 4 Letter as constituting a motion for leave to amend his complaint and a motion to extend discovery.  We discuss each next.

III.   <u>MOTION TO AMEND</u>

A.   <u>Applicable Law</u>

1.   <u>Motions to Amend Generally</u>

Rule 15(a) provides that a "court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The policy behind this rule is that "[l]iberal amendment promotes judicial economy by making it possible to dispose of all contentions between parties in one lawsuit."  <u>Bilt-Rite Steel Buck Corp. v. Duncan's Welding & Corr. Equip., Inc.</u>, 1990 WL 129970, at *1 (E.D.N.Y. Aug. 24, 1990) (citing <u>JennAir Prods. v. Penn Ventilator, Inc.</u>, 283 F.

Supp. 591, 594 (E.D. Pa. 1968)).  The decision to grant or deny leave to amend under Rule 15(a)(2) is within the trial court's discretion.  See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971) (citation omitted).  The court may deny leave to amend for "good reason," which normally involves an analysis of the four factors articulated in Foman v. Davis, 371 U.S. 178, 182 (1962): undue delay, bad faith, futility of amendment, or undue prejudice to the opposing party.  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (citing Foman, 371 U.S. at 182).

"If the amendment seeks to add a party, Rule 21 of the Federal Rules of Civil Procedure, which allows addition of a party . . . also comes into play.  However, that creates no additional obstacle, as the 'showing necessary under Rule 21 is the same as that required under Rule 15(a).'"  Soroof Trading Dev. Co. v. GE Microgen, Inc., 283 F.R.D. 142, 147 (S.D.N.Y. 2012) (internal citation omitted) (quoting Johnson v. Bryson, 851 F. Supp. 2d 688, 703 (S.D.N.Y. 2012)).

### 2.    Statutes of Limitations and Futility of Amendment

As noted above, a court may deny leave to amend because amendment would be futile. McCarthy, 482 F.3d at 200 (citing Foman, 371 U.S. at 182).  Claims barred by an applicable statute of limitations are futile.  Grace v. Rosenstock, 228 F.3d 40, 53 (2d Cir. 2000) ("Amendment would likely be futile if, for example, the claims the plaintiff sought to add would be barred by the applicable statute of limitations."); Davis v. Smith, 2007 WL 3104754, at *1 (N.D.N.Y. Oct. 22, 2007) ("A proposed amended pleading seeking to assert a claim which is barred by the statute of limitations is futile.").

Nonetheless, a plaintiff is not required to plead that his or her claims are timely because nonadherence to statutes of limitations is an affirmative defense.  See Abbas v. Dixon, 480 F.3d

636, 640 (2d Cir. 2007) (citation omitted); Fed. R. Civ. P. 8(c)(1).  However, "district courts may

dismiss an action <u>sua</u> <u>sponte</u> on limitations grounds in certain circumstances where the facts

supporting the statute of limitations defense are set forth in the papers plaintiff himself

submitted."  <u>Walters v. Indus. and Com. Bank of China, Ltd.</u>, 651 F.3d 280, 293 (2d Cir. 2011)

(internal quotation omitted).  In such cases, "[a] court does not have to wait for a motion to

dismiss, and waste judicial time and resources, but may instead deny a motion to amend to add

time-barred claims as futile."  <u>Gilmore v. Gilmore</u>, 2010 WL 4910211, at *2 (S.D.N.Y. Nov. 15,

2010) (internal quotation omitted); <u>see</u> <u>also</u> <u>Grace</u>, 228 F.3d at 55.

### 3.    Equitable Tolling and the Prison Litigation Reform Act

An otherwise time-barred claim may proceed if there is a basis for tolling the statute of

limitations.  The doctrine of equitable tolling, however, applies "only in 'rare and exceptional

circumstances,' where . . . 'extraordinary circumstances' prevented a party from timely

performing a required act, and . . . the party 'acted with reasonable diligence throughout the

period he [sought] to toll.'"  <u>Walker v. Jastremski</u>, 430 F.3d 560, 564 (2d Cir. 2005) (third

alteration in original) (quoting <u>Doe v. Menefee</u>, 391 F.3d 147, 159 (2d Cir. 2004)); <u>see</u> <u>also</u>

<u>Moses v. Westchester Cnty. Dep't of Corr.</u>, 951 F. Supp. 2d 448, 454 (S.D.N.Y. 2013) ("[C]ourts

in this Circuit deciding section 1983 claims have applied the federal equitable tolling standard,

which allows tolling where extraordinary circumstances prevented a party from timely

performing a required act." (internal quotation omitted)).  "Generally, a litigant seeking equitable

tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights

diligently, and (2) that some extraordinary circumstance stood in his way."  <u>Pace v.</u>

<u>DiGuglielmo</u>, 544 U.S. 408, 418 (2005); <u>accord</u> <u>A.Q.C. ex rel. Castillo v. United States</u>, 656

F.3d 135, 144 (2d Cir. 2011).

The doctrine of equitable tolling may in some instances be invoked in relation to the prison grievance process given that the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Second Circuit has held that a prisoner is entitled to equitable tolling on a § 1983 claim for the period during which he is exhausting applicable administrative remedies under the PLRA. See Gonzalez v. Hasty, 651 F.3d 318, 323-24 (2d Cir. 2011). Gonzalez applied the equitable tolling doctrine to prisoners pursing mandatory administrative remedies to resolve a "catch-22"; namely, that "the prisoner who files suit . . . prior to exhausting administrative remedies risks dismissal based upon [the PLRA]; whereas the prisoner who waits to exhaust his administrative remedies risks dismissal based upon untimeliness." Id. at 323 (first alteration in original) (internal quotation marks omitted) (quoting Johnson v. Rivera, 272 F.3d 519, 522 (7th Cir. 2001)).

B.     Analysis

1.     Addition of Correctional Officer Defendants

Defendants argue that the proposed amended complaint's addition of the named correctional officer defendants is futile because it is barred by the applicable statute of limitations. See Aug. 11 Letter at 2-4.

Here, Jones's original complaint named the officers involved in the strip searches as John or Jane Does. See Comp. ¶ 5. "Generally, 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013) (internal quotation marks omitted) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1075 (2d Cir.

1993)).  "['John Doe['] substitutions . . . 'may only be accomplished'" by satisfying an applicable provision in Fed. R. Civ. P. 15(c).  Id. (quoting Aslanidis, 7 F.3d at 1075).  Under Rule 15(c), when a party seeks to add new claim with respect to which the applicable statute of limitations has run, the new claim may proceed if it "relates back" to the original pleading.  Fed. R. Civ. P. 15(c)(1).  Here, Jones relies on Rule 15(c)(1)(A), which saves otherwise time-barred claims if "the law that provides the applicable statute of limitations allows relation back."  Fed. R. Civ. P. 15(c)(1)(A).[3]

> a.  Application of Statute of Limitations and Equitable Tolling

We begin by analyzing the date when the statute of limitations expired.  Although "[f]ederal law determines when a § 1983 cause of action accrues, and the Second Circuit has ruled that 'accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action,'" Lefebvre v. Morgan, 234 F. Supp. 3d 445, 459 (S.D.N.Y. 2017) (quoting Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002)), § 1983 itself does not provide a statute of limitations.  See 42 U.S.C. §§ 1983, 1988; Hogan, 738 F.3d at 517; accord Owens v. Okure, 488 U.S. 235, 239 (1989).  Therefore, in § 1983 actions, "courts apply the statute of limitations for personal injury actions under state law."  Hogan, 738 F.3d at 517 (citing Owens, 488 U.S. at 249-51; Pearl, 296 F.3d at 79).  For § 1983 actions filed in New York, the applicable statute of limitations is section 214 of New York's Civil Practice Law and Rules

---

[3]  Relation back is also allowed in "mistaken identity" cases—where the plaintiff sues the wrong defendant, the correct defendant knows of the mistake and is not prejudiced, and the plaintiff's proposed amended complaint seeks to remedy the error.  See Fed. R. Civ. P. 15(c)(1)(C).  Jones does not and cannot claim that such a mistake occurred here.  Case law reflects that "the lack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity'" under Rule 15(c)(1)(C).  See Hogan, 738 F.3d at 518 (quoting Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 470 (2d Cir. 1995)).

("CPLR"), which allows three years to file suit.  See id. (citing Pearl, 296 F.3d at 79; N.Y.

C.P.L.R. § 214); accord Lefebvre, 234 F. Supp. 3d at 458.

      Jones alleges that the strip-search violations took place on April 14, 2015 and April 22,

2015, see Comp. ¶¶ 43, 51; Proposed Am. Comp ¶¶ 40, 48, and thus the three-year limitations

period as to these claims expired on April 14, 2018, and April 22, 2018.  However, Jones has

made reference to the ongoing grievance process in relation to the statute of limitations issue, see

Sept. 1 Letter at 2-4, which we liberally construe as an assertion that he is entitled to equitable

tolling under Gonzalez, 651 F.3d at 323-24.

      Any grievance Jones was required to file was governed by the New York City

Department of Correction's Inmate Grievance and Request Program (available at

https://www.nyc.gov/html/doc/downloads/pdf/Directive_3376_Inmate_Grievance_Request_Prog

ram.pdf ) ("IGRP").  See, e.g., Girodes v. City of New York, 2018 WL 3597519, at *3 (S.D.N.Y.

July 26, 2018) ("The New York City Department of Correction's Inmate Grievance Resolution

Program ('IGRP') sets out the grievance procedures for inmates at Rikers Island.").  The IGRP

requires an inmate to: (1) file a complaint within ten business days from the date the alleged

condition or issue occurred; (2) in the event that informal resolution is not reached within five

days, request a formal hearing which must be held within five business days; (3) appeal any

unfavorable decision to the Commanding Officer within five business days, who must render his

or her decision within five businesses days; and (4) appeal any unfavorable decision by the

Commanding Officer to the Central Office Review Committee within five business days, which

must render its decision within 15 business days of receiving the inmate's appeal.  See IGRP at

12-27.  In the event that the inmate does not receive a timely disposition at any stage of the IGRP

process, the inmate may submit a request for an appeal within 10 days of when the response was

due. Id. at 15. However, an inmate transferred out of DOC custody cannot pursue an appeal of his grievance because he "no longer ha[s] access to the IGRP process." Id. at 19, 22, 25.

The strip-search incidents were grievable under the IGRP. See IGRP, Appendix A. And Jones has submitted evidence that he filed a grievance on the matter. See Sept. 1 Letter at 2-4, *34-36. But these efforts are ultimately of no consequence because the longest possible period of tolling to which Jones could be entitled is from April 24, 2015, when Jones filed a grievance, see id., to some date in "July 2015," when Jones alleges that he was transferred from Rikers Island to a New York State prison before receiving a final resolution—despite having appealed the initial DOC adjudication. See Jones Dep. Tr. 13:24-25, 14:1-25, 15:1-25. Upon Jones's transfer, the IGRP no longer applied to him. See IGRP at 19, 22, 25. Using July 31 as the transfer date, 98 days passed from the time Jones established that he filed a grievance until the transfer. Thus, equitable tolling could at most extend the statutes of limitations deadlines through July 21, 2018 and July 29, 2018. The proposed amended complaint, however, is dated April 22, 2020, see Proposed Am. Comp. at *27, long past even a tolled limitations deadline.

Jones maintains that because DOC failed to respond to his grievances, the grievance process was "unavailable" to him under the PLRA, and thus the "statu[t]e of limitations never started to run." Sept. 1 Letter at 3 (citing Ross v. Blake, 578 U.S. 632, 644 (2016); Williams v. Correction Officer Priatno, 829 F.3d 118, 120-21 (2d Cir. 2016)). Jones is correct that exhaustion is excused under the PLRA if an administrative remedy is not "available." See Ross, 578 U.S. at 642.[4] But that issue is not relevant to Jones's motion. Unavailability does not toll

---

[4] "An administrative procedure is 'unavailable' when (1) 'it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;' (2) the scheme is 'so opaque that it becomes, practically speaking, incapable of use,' meaning that 'some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it;' or (3) 'when prison administrators thwart inmates from taking advantage of a grievance process

the statute of limitations; it merely excuses Jones from pursuing an administrative remedy—

which as noted above, is an obligation that ceased to apply to Jones after July 2015.  See Ross,

578 U.S. at 642-44; Gonzalez, 651 F.3d at 323-24; Jones Dep. Tr. 13:24-25, 14:1-25, 15:1-25;

IGRP at 19, 22, 25.  If the IGRP was "unavailable" to Jones prior to his transfer, he would not be

entitled to any equitable tolling while he exhausted his administrative remedies at Rikers Island.

In this situation, Jones would have had no obligation to exhaust, and in the absence of such an

obligation, the "catch-22" concerns that animated the Gonzalez court have no force.  See 651

F.3d at 323.  In any event, because the IGRP did not apply to Jones once transferred, see Jones

Dep. Tr. 13:24-25, 14:1-25, 15:1-25; IGRP at 19, 22, 25, by August 2015, nothing prevented

Jones from filing suit.  Consequently, Jones could not possibly be entitled to tolling beyond that

date, irrespective of whether the IGRP procedure was previously unavailable.  Thus, we

conclude that Jones's claims are untimely.

    b.  Relation Back Under N.Y. C.P.L.R. § 1024

   As noted, Fed. R. Civ. P. 15(c)(1)(A) saves otherwise time-barred claims if "the law that

provides the applicable statute of limitations allows relation back."  New York's CPLR § 1024

authorizes the substitution of a "true name" for an "unknown party" and provides that  when

such substitution occurs, "all prior proceedings shall be deemed amended accordingly."  The

Second Circuit has held that a § 1983 plaintiff in federal court may substitute John and Jane Doe

defendants nunc pro tunc under § 1024.  See Hogan, 738 F.3d at 518-20.  "To take advantage of

§ 1024, a party must meet two requirements.  First, the party must 'exercise due diligence, prior

to the running of the statute of limitations, to identify the defendant by name.'  Second, the party

---

through machination, misrepresentation, or intimidation.'"  Hayes v. Dahlke, 976 F.3d 259, 268
(2d Cir. 2020) (quoting Ross, 578 U.S. at 643-44).

must describe the John Doe party 'in such form as will fairly apprise the party that [he] is the intended defendant.'" Id. at 519 (quoting Bumpus v. N.Y.C. Transit Auth., 883 N.Y.S.2d 99, 104 (App. Div. 2009)) (alteration in original) (internal citations omitted).

To satisfy the first prong, "a plaintiff must 'show that he or she made timely efforts to identify the correct party before the statute of limitations expired.'" Abreu v. City of New York, 2018 WL 3315572, at *5 (S.D.N.Y. July 5, 2018) (quoting Ceara v. Deacon, 68 F. Supp. 3d 402, 409 (S.D.N.Y. 2014)). This requires "concrete and timely steps to ascertain an officer['s] . . . identity." Barrett v. City of Newburgh, 720 F. App'x 29, 33 (2d Cir. 2017) (summary order).

In contrast to its due diligence standard, § 1024's second prong "is not particularly arduous." Abreu, 2018 WL 3315572, at *6. This requirement is satisfied when a plaintiff's original complaint "provides enough detail to give notice to the John Does that they are the intended defendants." Hogan, 738 F.3d at 519 (adequate description when complaint alleged date, time, and location of excessive force incident, and included "substantial detail concerning the appearance of [the] alleged assailants"); Gudanowski v. Burrell, 2021 WL 3887612, at *5 (S.D.N.Y. Aug. 31, 2021) (adequate description where complaint alleged date and time of incident, as well as "specific details unique to the incident that an officer involved would likely remember, such as the presence of a news helicopter and the involvement of a flatbed tow truck from Brookside Towing in Hackensack, New Jersey").

Here, Jones cannot satisfy the first prong. To demonstrate his due diligence, Jones points to a 2015 personal injury claim he submitted to the New York City Comptroller and Judge Broderick's Valentin order. See Sept. 1 Letter at 3. Jones stats that on July 15, 2015, he filed a personal injury claim with the New York City Comptroller's officer regarding the strip searches.

See id. at 3, *42-47.  When Jones inquired into the status of his claim in 2016, he was informed

that the claim was under investigation.  See id. at 3, *49.  But Jones provides no evidence that his

2015 claim sought information regarding the identities of then-unknown correctional officers.

See id.  Nor does he provide any evidence that he requested their identities from the City or from

DOC.  See id.  Jones does not point to any action he took after the filing of the claim except for a

request he made in 2016 for an update from the Comptroller, who told Jones that his claim was

still "under investigation."  Id. at 3, *49.  This claim to the Comptroller cannot be viewed not as

an attempt to obtain information about the John and Jane Doe defendants' identities but only as a

step analogous to filing a lawsuit, which courts have repeatedly recognized is insufficient,

standing alone, to satisfy the first prong.  See, e.g., JCG v. Ercole, 2014 WL 1630815, at *14

(S.D.N.Y. Apr. 24, 2014); Temple v. N.Y. Cmty. Hosp. of Brooklyn, 933 N.Y.S.2d 321, 323 (2d

Dep't 2011).  As for the May 15, 2018, Valentin order, its existence does not reflect due

diligence on Jones's part as it was not issued at Jones's request and --- because Jones filed suit so

late in the limitations period --- was issued after the un-tolled limitations deadline and just weeks

before the expiration of the tolled deadline.  See generally Gutek v. Borchardt, 2020 WL

2336187, at *5-6 (N.D.N.Y. May 11, 2020) (no due diligence when plaintiff, who "could not

identify any action . . . taken to identify" John Doe defendants prior to expiration of limitations

period, sued with three months remaining in limitations period and a sua sponte Valentin order

was not issued until limitations period had expired).[5]

---

[5]  Jones mentions his "expeditious use of the pretrial discovery process," see Sept. 1 Letter at *9-
21 (plaintiff's interrogatory requests dated January 7, 2019).  This effort is of no consequence
because it did not take place "prior to the running of the statute of limitations."  Hogan, 738 F.3d
at 518 (quotation omitted).

In sum, Jones filed suit only weeks (or a few months if equitable tolling is applied) before the expiration of the statute of limitations and has not identified any actions he took to uncover the John and Jane Doe defendants' identities prior to the expiration of the limitations period. This is insufficient under § 1024. See, e.g., Vasconcellos v. City of New York, 2014 WL 4961441, at *9 (S.D.N.Y. Oct. 2, 2014) (declining to apply § 1024 because "Vasconcellos did nothing to exercise due diligence prior to the running of the statute-or, for that matter, after it ran"); JCG, 2014 WL 1630815, at *14-15 (no due diligence when incarcerated pro se plaintiff made only last minute efforts to obtain information but did not serve discovery demands, file FOIL requests, or write letters to the Attorney General); Williams v. United States, 2010 WL 963474, at *13 (S.D.N.Y. Feb. 25, 2010) (incarcerated pro se plaintiff's representation that he "made his best efforts to carry out the case accordingly" was insufficient to show diligence when there was no evidence plaintiff filed FOIL requests or wrote letters to identify defendants). Courts commonly reject attempts to invoke § 1024 where, as here, a plaintiff waits until the very end of the limitations period to file suit. See, e.g., Berman v. Perez, 2018 WL 565269, at *3 (S.D.N.Y. Jan. 24, 2018); Galberth v. Washington, 2016 WL 1255738, at *10-11 (S.D.N.Y. Mar. 29, 2016), aff'd, 743 F. App'x 479 (2d Cir. 2018) (summary order).

Accordingly, Jones is denied leave to amend to the extent he seeks to substitute the named correctional officers for the John and Jane Doe defendants.

### 2. New Allegation Against Dr. Segal

Jones seeks to add a new allegation against Dr. Segal; namely, that he saw her on June 1, 2015, and that she refused to provide Jones with a double or special mattress on that date. See Proposed Am. Comp. ¶ 39. Jones's original complaint alleged that he saw Dr. Segal on various dates in 2015, though not the June 1 date. See Comp. ¶ 39. Dr. Segal makes no argument that

the amendment fails to relate back to the original filing, that there would be any prejudice from the proposed amendment, that there is undue delay, or that that the proposed amendment could not survive a motion to dismiss addressed to the pleadings.  See June 29 Letter at *1-3; July 20 Letter at *1-2; see generally Foman, 371 U.S. at 182.  Indeed, Dr. Segal cites no case law whatsoever in opposition to the motion to amend.  See June 29 Letter at *1-3; July 20 Letter at *1-2.  Instead, Dr. Segal alleges that she did not in fact see plaintiff on June 1, 2015, and that there is documentary evidence to prove it.  See June 29 Letter at *1-3; July 20 Letter at *1-2.

The Court rejects this argument.  Dr. Segal will of course have the opportunity to prove that she never saw plaintiff on June 1, 2015, either in a summary judgment motion or at trial.  But a party may not oppose a motion to amend on the ground that the proposed new allegations are factually incorrect inasmuch as factual inaccuracy is not one of the Foman factors.  See generally Safety Mgt. Sys., Inc. v. Safety Software Ltd., 2011 WL 498313, at *2 (S.D.N.Y. Feb. 10, 2011) (rejecting argument that leave to amend could be denied on the ground that allegations in the proposed pleading were "factually untrue").  We thus grant Jones's application for leave to amend with respect to this allegation.

*     *     *

To recapitulate: Jones's motion for leave to file the proposed amended complaint is granted in part and denied in part as set forth above.  Rather than require that Jones, who is pro se and incarcerated, redraft the complaint, the Court will docket the proposed amended complaint as the "Amended Complaint" and strike the names of the newly-named defendants, including the allegations identifying those individuals as defendants.  The substantive allegations regarding the individual defendants, Proposed Am. Comp. ¶¶ 41-52, will remain as they may be

relevant to plaintiff's surviving claim pursuant to <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978).

IV.   <u>MOTION TO EXTEND DISCOVERY</u>

Jones also moves to extend discovery so he can obtain additional information regarding the roles each of the newly-named correctional officers played in the 2015 strip-search incidents. Jones received the names of these correctional officers before the close of discovery. <u>See</u> May 4 Letter at *1.   He does not explain, however, what specific information he seeks and why it could not have been obtained earlier.  Jones therefore has not shown "good cause" under Fed. R. Civ. P. 6(b) to extend the deadlines in the existing scheduling order, <u>see</u> Scheduling Order ¶¶ 4-5. Also, reopening discovery into the named correctional officers is unwarranted in light of our determination that Jones should be denied leave to add those officers as defendants.

Finally, the Court notes that Jorge Villalobos has been served, <u>see</u> Marshal's Process Receipt and Return Form, filed Nov. 10, 2021 (Docket # 109), and will presumably be appearing as a defendant.  While it is theoretically possible that this new appearance might require new discovery, it seems unlikely.  In any event, the parties shall discuss this matter within 10 days of Villalobos responding to the complaint and the City shall report on the outcome of the discussions within 21 days thereafter.  Assuming no discovery is required, the parties shall at that time propose a schedule for summary judgment motions, which shall be returnable before Judge Broderick.

V.   <u>CONCLUSION</u>

For the foregoing reasons, Jones's motion to amend (Docket # 94) is granted in part, and Jones's motion to extend discovery (Docket # 94) is denied.  The Court will docket Jones's proposed amended complaint with the addition of the proposed new defendants omitted.  The

City shall report to the Court in accordance with this Opinion and Order on the status of this

matter within 31 days of Villalobos responding to the complaint.

     SO ORDERED.

Dated: November 29, 2021
     New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies Mailed by Chambers to Pro Plaintiff